UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK - MANHATTAN DIVISION

----------------------------------------------------------X

In Re:

SARAH ELIZABETH SANDERS,

            Debtor.

----------------------------------------------------------X

Case No. 19-13848-cgm

Chapter 13

**<u>NOTICE OF IN REM MOTION
FOR RELIEF FROM THE
AUTOMATIC STAY AND
ANNULMENT OF THE
AUTOMATIC STAY</u>**

Upon the annexed affirmation of Jenelle C. Arnold, Esq., dated March 19, 2020, and the exhibits annexed thereto, Spectrum Mortgage Holdings, LLC , a secured creditor, will move this court before the Hon. Judge Honorable Cecelia G. Morris, United States Bankruptcy Judge, on the 30th day of April, 2020 at 11:00 AM in the forenoon of that day, or as soon thereafter as counsel may be heard, at the courthouse located at One Bowling Green, New York, New York 10004-1408, for an order pursuant to 362(d)(1), and (d)(4)(B) and 1301(c)(1), of the Bankruptcy Code annulling and modifying the automatic stay so that Spectrum Mortgage Holdings, LLC , as secured creditor, can foreclose the mortgage it holds on the premises known as 322 East 120th Street, New York, New York 10029, on the grounds that (a) Debtor's filing is in bad faith, (b) annulment of the automatic stay retroactive to date of filing; and/ or Confirm No Stay Was In Effect Upon Date of Filing; and  (c) Relief pursuant to 11 U.S.C. § 362(d)(4)(B), for in rem relief from the automatic stay imposed in subsequent cases under 11 U.S.C. § 362(a), such that any and all future filings under the Bankruptcy Code during the next two years by the Debtor herein, Sarah Sanders (the "Debtor"), or any other person or entity with an interest in the Property, shall not operate as a stay as to Secured Creditor's enforcement of its rights in and to the Property, as the Debtor's bankruptcy petition was part of a scheme to delay, hinder, and defraud creditors that has involved multiple bankruptcy filings by the Debtor; and (d) for such other and further relief as this Court deems just

and proper.

Dated: <u>March 19, 2020</u>

Respectfully submitted,

<u>/s/ Jenelle C. Arnold</u>
Jenelle C. Arnold, Bar No.: 5263777
Attorney for Movant
Aldridge Pite, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933
Telephone: (858) 750-7600
Facsimile: (619) 590-1385
Email: JArnold@aldridgepite.com

TO:

Sarah Elizabeth Sanders
322 E. 120th St, #1
New York, NY 10035

Krista M. Preuss
399 Knollwood Road
White Plains, NY 10603
info@ch13kp.com

Office of the United States Trustee
U.S. Federal Office Building
201 Varick Street, Room 1006
New York, NY 10014
USTPRegion02.NYECF@USDOJ.GOV

Lorraine Sanders
322 East 120th Street
New York, NY 10029

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK - MANHATTAN DIVISION

------------------------------------------------------------X       Case No. 19-13848-cgm

In Re:
                                                                    Chapter 13
SARAH ELIZABETH SANDERS,

                            Debtor.
------------------------------------------------------------X

## AFFIDAVIT IN SUPPORT OF IN REM MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND ANNULMENT OF THE AUTOMATIC STAY

SPECTRUM MORTGAGE HOLDINGS, LLC, ("Creditor") hereby moves this Court, pursuant to 11 U.S.C. § 362(d)(1), and (d)(4)(B) and 1301(c)(1), for relief from the automatic stay with respect to certain real property of the Debtor having an address of 322 East 120th Street, New York, New York 10029 (the "Property"), for all purposes allowed by law, the Note (defined below), the Modification Agreement (defined below), and applicable law, including but not limited to the right to foreclose.  Attached hereto as Exhibit 1 is a background information form required by local rules. In further support of this Motion, the undersigned respectfully states under penalty of perjury the following:

## A. FACTUAL BANKGROUND RELATED TO OWNERSHIP OF THE PROPERTY

1.      A petition under Chapter 13 of the United States Bankruptcy Code was filed with respect to the Debtor on December 4, 2019.

2.      A hearing to consider confirmation of the Chapter 13 Plan of the Debtor is scheduled for April 30, 2020.

3.      Sarah Sanders ("Debtor") and Lorraine Sanders (collectively the "Borrowers") have executed and delivered or is otherwise obligated with respect  to that certain promissory note in the original principal amount of  $223,250.00 (the "Note").  A copy of the Note is attached

hereto as Exhibit 2. Creditor is an entity entitled to enforce the Note.

4.    Pursuant to that certain Modification Agreement (the "Agreement"), all obligations (collectively, the "Obligations") of the Borrowers under and with respect to the Note and Agreement are secured by the Property. A copy of the Agreement is attached hereto as Exhibit 3.

5.    All rights and remedies under the Debt Agreement have been assigned to the Creditor pursuant to that certain assignment of Debt Agreement, a copy of which is attached hereto as Exhibit 4.

6.    The legal description of the Property and recording information is set forth in the Agreement, a copy of which is attached hereto, and such description and information is incorporated and made a part hereof by reference.

**B. THE FORECLOSURE ACTION AND SALE IN RELATION TO THE PROPERTY**

7.    On September 22, 2014, Secured Creditor commenced foreclosure proceeding by filing a Summons, Complaint and Notice of Pendency with the Supreme Court, New York County New York under Index Number 850286/2014.

8.    Sarah Sanders and Lorraine Sanders were named as defendants in the foreclosure action. The Secured Creditor in due course obtained a judgment of foreclosure and sale in the foreclosure action on March 27, 2018, which was entered on April 2, 2018, and said judgment with the notice of entry is attached hereto as Exhibit 5.

9.    On December 4, 2019, the Subject Property was sold at a foreclosure sale, and Long Bin Lin & Hui Bain An were the purchasers of the Property.

10.   Creditor did not have knowledge of the Debtor's Bankruptcy filing at the time of the sale.

**C. SERIES OF BANKRUPTCY PROCEEDINGS**

11.   On or about October 13, 2015, Lorriane Al-Amin aka Lorraine Sanders filed a prior voluntary petition under Chapter 13 of the Bankruptcy Code, for the Southern District of New York, and was assigned case No. 15-12772-cgm. Said case was dismissed on or about April 12, 2017, and subsequently terminated on August 11, 2017. (See In re Al-Amin, case no. 15-12772

(Bankr. S.D. NY.)).

12. On or about June 5, 2018, Sarah E Sanders filed a prior voluntary petition under Chapter 13 of the Bankruptcy Code, for the Southern District of New York, and was assigned case No. 18-11733-cgm. Said case was dismissed on or about October 3, 2019. (See In re Sanders, case no. 18-11733 (Bankr. S.D. NY.)).

## D. **RELIEF BEING SOUGHT**

**I. The Court should exercise its authority pursuant to 11 U.S.C. Section 105(A) and grant *in rem* relief.**

13. It is well accepted that "one of the primary purposes of bankruptcy is to provide the 'honest but unfortunate debtor with the opportunity to make a 'fresh start.'" *In re Dupuy*, 308 B.R. 843, 848 (Bankr. E.D.Tenn. 2004). It is equally recognized that "all bankruptcy petitions must be filed in good faith and must be 'fundamentally fair in a manner that complies with the spirit of the Bankruptcy Code's provisions,'" *Dupuy* 308B.R. at 848-849.

14. However, "the filing of repetitive bankruptcy cases to forestall secured creditors from exercising foreclosure rights, and without any intent to comply with basic bankruptcy requirements, is an abuse of process and a violation of the spirit and intent, if not the actual letter, of the Bankruptcy Code." *In re Hughes*, 2007 Bankr. LEXIS 1328 at *41-42. (Bankr. N.D. Tex. 2007). In such cases, in rem relief is appropriate in order to allow the Secured Creditor to complete the foreclosure process. *See Gonzalez-Ruiz*, 341 B.R. at 385 (*in rem* relief appropriate where Borrowers filed three bankruptcy cases in order to prevent the creditor from completing foreclosure); *In re Selinsky,* 365 B.R. 260 (Bankr. S.D. FL 2007) (Court ordered *in rem* relief where the Borrower's three bankruptcy filings constituted a gross abuse of the bankruptcy process).

15. Section 105(a) of the Bankruptcy Code provides in pertinent part that "the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C.§ 105(a). It is established that § 105 empowers the Court "to provide a creditor with prospective relief from the automatic stay where it is clear that a debtor has filed successive bankruptcy petitions to stay foreclosure sales without the intention of completing or

without having the ability to complete the bankruptcy process in good faith." *In re Feldman*, 309 B.R. 422, 426 (Bankr. E.D.N.Y. 2004); see also *In re Henderson*, 395 B.R. 893 (Bankr. D.S.C. 2008) (the authority of the Court to grant *in rem* relief stems from its broad powers under 11 U.S.C.§105(a) to issue orders necessary to carry out provisions of the Bankruptcy Code and prevent abuse of process).

16. *""In rem* relief is prospective relief that will apply to others who may file a petition and invoke the automatic stay as to the same real property." *In re Lord*, 325 B.R. 121, 129 (Bankr. S.D.N.Y. 2005). "An order granting *in rem* relief from stay is an appropriate remedy when a debtor or transferee of a debtor serially files bankruptcy petitions solely to invoke the automatic stay." *Gonzalez-Ruiz v. Doral Financial Corp.*, 341 B.R. 371, 384 (B.A.P. 1 "Cir. 2006). "An *in rem* order ...attaches to the property and prevents the imposition of the automatic stay *only as to the property at issue* in future bankruptcy filings by co-owners." *In re Keefer*, 2005 Bankr LEXIS 2149 at *11 (Bankr. S.D.N.Y. February 10, 2005). The purpose of *in rem* relief is to prevent "an abuse of the bankruptcy code by multiple debtors acting in concert." *Keefer*, 2005 Bankr LEXIS at *11.

17. In order to grant *in rem* relief, "'the record must clearly demonstrate an abuse of the bankruptcy process through multiple filings with the sole purpose of frustrating the legitimate efforts of creditors to recover their collateral.'" *Henderson*, 395 B.R. at 901 *quoting In rePrice*, 304 B.R. 769, 773 (Bankr. N.D. Ohio 2004).

18. Here, *in rem* relief is appropriate because a review of the record demonstrates that the Debtor has engaged in a history of serial filings with no intent to complete the bankruptcy process, in that each case was dismissed shortly after being commenced for failure to file the requisite documents needed to proceed with the bankruptcy process or for failure to make plan payments. Further this bankruptcy case was filed the same day as the foreclosure sale, and was solely filed in a last minute effort to attempt to invalidate the foreclosure sale.

19. Therefore, "the multiple filings are evidence of bad faith and evidence of the fact that the Debtor [and non-debtors] are abusing the bankruptcy process." *Price*, 304 B.R. at 774 (*in rem*

relief granted where the Borrowers filed three bankruptcy cases). Thus, *in rem* relief is appropriate.

20. Additionally, while *in rem* relief is an extraordinary form of relief, it has 'been granted where 'an ordinary relief from the stay order will not be effective as demonstrated by the prior history of the parties and the property.'" *In re Price*, 304 B.R. 769, 773 (Bankr. N.D. Ohio 2004). As demonstrated by the factual history, ordinary relief from the stay would be an ineffective measure to allow the Secured Creditor to complete the foreclosure process.

21. Based on the foregoing, the record unequivocally demonstrates that there has been a history of serial bankruptcy filings. As such, an order granting *in rem* relief as to the Property such that any and all future filings by any person or entity with an interest in the Property shall not operate as an automatic stay against the Secured Creditor and its successors and/or assigns is appropriate.

## II. The automatic stay should be terminated pursuant to 11 U.S.C. Section 362(d)(4)(B)

22. It is well established that a creditor whose debt is secured by residential real property may move under 11 U.S.C. § 362(d) for relief from the automatic stay. Under BAPCPA, a new section of 362(d) was added with the intent "to reduce abusive filings." *In re Muhaimin*, 343 B.R. 159 (Bankr. D. Maryland 2006) *citing* HR. Rep. 109-31(1) at 69 (2005). 11 U.S.C. § 362(d)(4)(B) provides that

> "the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, and defraud creditors that involved . . . multiple bankruptcy filings affecting such real property." U.S.C. § 362(d)(4)(B).

23. This provision also provides that relief under this section "shall be binding in any other case under this title purporting to affect such real property filed not later than 2 years after the date of the entry of such order by the court . . ." 11 U.S.C. § 362(d)(4)(B). The facts of this case support the conclusion that relief pursuant to§ 362(d)(4)(B) is appropriate and the automatic stay should

be terminated with respect to the Secured Creditor's interest in the Premises.

24. In order to establish that it is entitled to relief pursuant to § 362(d)(4)(B) the Secured Creditor has the burden of establishing that the current bankruptcy filing is part of a scheme to hinder, delay and defraud the bank. *See In re Lemma*, 394 BR. 315, 324 (Bankr. E.D.N.Y. 2008). The fact that a Debtor has filed multiple bankruptcy cases, in and of itself, is not sufficient cause for relief under this section. *See In re Lemma*, 394 BR. 315 @ 324. However, an intent to hinder, delay and defraud can be inferred from the filing of multiple bankruptcies when the filings are deficient, strategically timed, or otherwise indicate bad faith. *See In re Montalvo*, 416 B.R. 381, 387 (Bankr. E.D.N.Y. 2009)(finding six strategically timed, deficient bankruptcy filings were sufficient to find that the sixth bankruptcy was part of a scheme to delay, hinder and defraud the bank and that *in rem* relief was appropriate); *In re Blair,* 2009 Bankr. LEXIS 4195 (Bankr. E.D.N.Y. 2009) (finding that ten deficient, strategically timed bankruptcy filings was sufficient to grant in rem relief pursuant to § 362(d)(4)(B)). *See In re: Richmond,* 513 B.R. 34, 38 (Bankr. E.D.N.Y. 2014)(finding that two bankruptcies filed on the eve of scheduled foreclosure sales, when the Debtor was repeatedly attempting to collaterally attack the foreclosure judgment and the property was not part of Debtor's estate, provided sufficient cause to grant *in rem* relief).

25. Bankruptcy Courts may infer an intent to hinder, delay, and defraud creditors from the fact of serial filings, without holding an evidentiary hearing. Relevant to this analysis is whether a debtor has "evinced no true intention to reorganize their financial affairs" and whether a debtor's previous filings were " prosecuted to any meaningful degree." *See In re Valid Value Props*, 2017 Bankr. LEXIS 27, 18 (Bankr. S.D.N.Y. 2017)(citations omitted).

26. A review of the bankruptcy filings by the Debtor demonstrate that there exists a scheme to delay, hinder, and defraud. The repeated filings have resulted in undue delay and hindrance of the Secured Creditor's efforts to foreclose on the Property.

27. The Secured Creditor has sustained injury as a result of the repeated filings in this case. The Secured Creditor's Mortgage Obligation is due for October 1, 2011. Additionally, the Secured Creditor is suffering immediate and irreparable injury and loss because the Secured Creditor is not

receiving any income to pay the real estate taxes and/or hazard insurance.

28. As can be seen from the history of filings, there has been a repeated attempt to thwart the Secured Creditor's attempts to foreclose on the property. Based on this history of abuse, this Court should grant the Secured Creditor's requested relief and issue an order that would prevent the imposition of the automatic stay on the Property for at least two years in order to provide the Secured Creditor time to complete the foreclosure or any other legal proceeding that it deems necessary in relation to the Property.

**III. Sufficient Cause Exists To Annul The Automatic Stay To Validate The Foreclosure Sale of the Property and/or Confirm No Stay was in Place when the Bankruptcy Case Was Filed**

29. However, the Bankruptcy Code provides that, "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay." 11 U.S.C. § 362(d). Indeed, in appropriate circumstances, the court may annul the automatic stay retroactively to validate an act that was committed in violation of the stay and would otherwise be void. See In re Siciliano, 13 F.3d 748, 751 (3rd Cir. 1994); see also Schartz, supra at 573.

30.     Generally, the bankruptcy court has wide latitude to determine whether annulment of the automatic stay is appropriate and makes a case-by-case determination by balancing the equities. In re Fjeldsted, 293 B.R. 12, 26 (9th Cir. B.A.P. 2003). Although no one factor is dispositive, courts typically focus on two factors, including: (1) whether the creditor was aware of the bankruptcy petition; and (2) whether the debtor engaged in unreasonable or inequitable conduct, or prejudice would result to the creditor. Other factors courts consider include: (1) the number of filings; (2) whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors; (3) a weighing of the extent of prejudice to creditors or third parties if the stay relief is not made retroactive, including whether harm exists to a bona fide purchaser; (4) the debtor's overall good faith (based upon the totality of the circumstances); (5) whether creditors knew of the stay, but nonetheless took action, thus compounding the problem; (6) whether the

debtor has complied, and is otherwise complying, with the Bankruptcy Code and Rules; (7) the relative ease of restoring parties to the status quo ante; (8) the costs of annulment to debtors and creditors; (9) how quickly creditors moved for annulment, or how quickly debtors moved to set aside the sale or violative conduct; (10)whether, after learning of the bankruptcy, creditors proceeded to take steps in continued violation of the stay, or whether they moved expeditiously to gain relief; (11) whether annulment of the stay will cause irreparable injury to the debtor; and (12) whether stay relief will promote judicial economy or other efficiencies. Id. at 25.

31. Here, cause exists to annul the Automatic Stay. First, the Debtor filed for Bankruptcy Relief the same day as the scheduled sale. Long Bin Lin & Hui Bain An are bona fide third party purchasers that were unaware of the Debtor's Bankruptcy filing at the time of the Foreclosure Sale. Furthermore, annulment is warranted by virtue of the fact that Debtor's bankruptcy case appears to have been filed as part of a bad faith scheme to delay, hinder and/or defraud the previously secured creditor from foreclosing on the Property. Specifically, this is the third bankruptcy filing between Debtor and Borrower. Other factors that support annulment are the timeliness of Creditor's action to file the Motion for Relief from Stay and Annulment of the Stay, Debtor's failure to take action to set aside the sale. Furthermore, in the event the Court does not grant annulment, Creditor would be unduly prejudiced whereas Debtor will suffer no prejudice as a result of the Court granting annulment. Indeed, if annulment is not granted, the sale will be deemed null and void as a matter of law and Movant will be forced to return the Property and forego any anticipated return on its investment.

Further, there is cause for relief under 11 U.S.C. 362(d)(4) due to the bad faith actions of the Debtor and the scheme to hinder, delay, and defraud this Creditor. Debtor's current case appears to be part of a scheme to delay, hinder and defraud Movant as: (1) this is the third bankruptcy case between Debtor and the Borrower, (2) Debtor has failed to file all required documents. In addition, Debtor had a prior case dismissed within past twelve (12) months, and has failed to file a Motion to Impose the Automatic Stay. As a result, debtor is not prejudiced by the granting of this Motion based on the fact that Creditor would be entitled to relief from stay. For

all of the foregoing reasons, Creditor contends there is sufficient cause to annul the automatic stay to validate the trustee's sale at which it purchased the Property.

32.     Based on the foregoing, the Secured Creditor has provided ample cause to justify the Court issuing an order pursuant to 11 U.S.C. § 362(d)(4)(B). The pattern of conduct suggests that the Debtor filed her bankruptcy cases in bad faith. As such, the Secured Creditor requests an Order of the Court terminating the automatic stay, with prejudice, such that any and all future filings by any person or entity with an interest in the Property shall not operate as an automatic stay against the Secured Creditor for a period of two years from the date of entry of the Order.

33.     A copy of a proposed Order granting the relief sought by Secured Creditor is annexed hereto as Exhibit 6.

34. No prior application has been made for the relief requested herein.

35. The legal description for the Mortgaged Premises is attached hereto as Exhibit 3

WHEREFORE, the Secured Creditor respectfully requests (1) an Order pursuant to 11 U.S.C. §105(a) granting *in rem* relief as to the real property commonly known as 322 East 120th Street, New York, NY 11029 (2) an Order pursuant to 11 U.S.C. § 362(d)(4)(B) terminating the automatic stay as to movant's interest in in real property commonly known as 322 East 120th Street, New York, NY 11029and (3) that the stay be annulled retroactively to the date of the Bankruptcy filing to validate the post-petition sale, together with such other and further relief as the Court deems just and equitable.

Dated: <u>March 19, 2020</u>

Respectfully submitted,

<u>*/s/ Jenelle C. Arnold*</u>
Jenelle C. Arnold, Bar No.: 5263777
Attorney for Creditor
Aldridge Pite, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933
Telephone: (858) 750-7600
Facsimile: (619) 590-1385
Email: JArnold@aldridgepite.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK - MANHATTAN DIVISION

-------------------------------------------------------------X          Case No. 19-13848-cgm
In Re:

                                                                        Chapter 13

SARAH ELIZABETH SANDERS,

                        Debtor.                                          Exhibit 1
-------------------------------------------------------------X

---

## RELIEF FROM STAY - REAL ESTATE AND
## COOPERATIVE APARTMENTS

I, _Michael J. Lima_ (name) the _Managing Member_ (title) OF Spectrum
Mortgage Holdings, LLC (HEREINAFTER, "MOVANT"), HEREBY DECLARE (OR
CERTIIFY, VERIFY, OR STATE):

### BACKGROUND INFORMATION

1.      REAL PROPERTY OR COOPERATIVE APARTMENT ADDRESS WHICH IS THE
        SUBJECT OF THIS MOTION: 322 East 120th Street, New York, New York 10029

2.      LENDER NAME: Spectrum Mortgage Holdings, LLC

3.      DATE OF MORTGAGE: November 20, 1997

4.      POST-PETITION PAYMENT ADDRESS: 301 West Bay Street, Jacksonville, FL
        32202

### DEBT/VALUE REPRESENTATIONS

5.      TOTAL PRE-PETITION AND POST-PETITION INDEBTEDNESS OF DEBTOR(S) TO
        MOVANT AT THE TIME OF FILING THE MOTION: $379,456.24 as of March 5, 2020

        (NOTE: this amount may not be relied on as a "payoff" quotation.)

6.      MOVANT'S ESTIMATED MARKET VALUE OF THE REAL PROPERTY OR
        COOPERATIVE APARTMENT: N/A

7.      SOURCE OF ESTIMATED VALUATION: N/A

**STATUS OF DEBT AS OF**
**THE PETITION DATE**

8.      TOTAL PRE-PETITION INDEBTEDNESS OF DEBTOR(S) TO MOVANT AS OF PETITION FILING DATE: $374,392.09

       A.   AMOUNT OF PRINCIPAL:                                      : $189,789.71

       B.   AMOUNT OF INTEREST:                                      : $115,701.95

       C.   AMOUNT OF ESCROW (TAXES AND INSURANCE):   : $52,770.21

       D.   AMOUNT OF FORCED PLACED INSURANCE   $0.00
EXPENDED BY MOVANT:

       E.   AMOUNT OF ATTORNEYS' FEES BILLED TO   $14,211.50
DEBTOR(S)PRE-PETITION:

       F.   AMOUNT OF PRE-PETITION LATE FEES, IF ANY   : $1,192.87
BILLED TO  DEBTOR(S):

9.      CONTRACTUAL INTEREST RATE: 7.375 % (If interest is (or was) adjustable, please list the rate(s) and date(s) the rate(s) was/were in effect on a separate sheet and attach the sheet as an exhibit to this form; please list the exhibit number here: N/A.)

10.     PLEASE EXPLAIN ANY ADDITIONAL PRE-PETITION FEES, CHARGES OR AMOUNTS CHARGED TO DEBTOR'S ACCOUNT AND NOT LISTED ABOVE:

$725.85

(If additional space is needed, please list the amounts on a separate sheet and attach the sheet as an exhibit to this form; please list the exhibit number here: N/A.)


**AMOUNT OF ALLEGED POST-PETITION DEFAULT**
**(AS OF March 5, 2020)**


11.     DATE LAST PAYMENT WAS RECEIVED: N/A

12.     ALLEGED TOTAL NUMBER OF PAYMENTS DUE POST-PETITION FROM FILING OF PETITION THROUGH PAYMENT DUE AS OF MARCH 5, 2020: THREE (3) PAYMENTS

13.    PLEASE LIST ALL POST-PETITION PAYMENTS ALLEGED TO BE IN DEFAULT:

| Alleged Payment Due Date | Alleged Amount Due | Amount Received | Amount Applied to Principal | Amount Applied to Interest | Amount Applied to Escrow | Late fee Charged (if any) |
|---|---|---|---|---|---|---|
| 1/1/2020 | $2,423.01 | | | | | |
| 2/1/2020 | $2,423.01 | | | | | |
| 3/1/2020 | $2,423.01 | | | | | |
| TOTAL: | $7,269.03 | | | | | |

14.    AMOUNT OF MOVANT'S ATTORNEYS' FEES BILLED TO DEBTOR FOR THE PREPARATION, FILING AND PROSECUTION OF THIS MOTION: $850.00

15.    AMOUNT OF MOVANT'S FILING FEE FOR THISMOTION: $181.00

16.    OTHER ATTORNEY'S' FEES BILLED TO DEBTOR POST-PETITION: $0.00

17.    AMOUNT OF MOVANT'S POST-PETITION INSPECTION FEES: $0.00

18.    AMOUNT OF MOVANT'S POST-PETITION APPRAISAL/BROKER'S PRICE OPINION: $0.00

19.    AMOUNT OF FORCED PLACED INSURANCE OR INSURANCE PROVIDED BY THE MOVANT POST-PETITION: $0.00

20.    SUM HELD IN SUSPENSE BY MOVANT IN CONNECTION WITH THIS CONTRACT, IF APPLICABLE: $0.00

21.    AMOUNT OF OTHER POST-PETITION ADVANCES OR CHARGES, FOR EXAMPLE TAXES, INSURANCE INCURRED BY DEBTOR ETC.: $0.00

**REQUIRED ATTACHMENTS TO MOTION**

Please attach the following documents to this motion and indicate the exhibit number associated with the documents.

(1)    Copies of documents that indicate Movant's interest in the subject property. For purposes of example only, a complete and legible copy of the promissory note or other debt instrument together with a complete and legible copy of the mortgage and any assignments in the chain from the original mortgagee to the current moving party. (Exhibit 2, 3, 4.)

(2)    Copies of documents establishing proof of standing to bring this Motion. (Exhibit 2, 3, 4.)

(3) Copies of document establishing that Movant's interest in the real property or cooperative apartment was perfected, For the purposes of example only, a complete and legible copy of the Financing Statement (UCC-1) filed with either the Clerk's Office or the Register of the county the property or cooperative apartment is located in. (Exhibit 2, 3, 4.)

# CERTIFICATION FOR BUSINESS RECORDS

I CERTIFY THAT THE INFORMATMION PROVIDED IN THIS FORM AND/OR ANY EXHIBITS ATTACHED TO THIS FORM (OTHER THAN THE TRANS ACTIONAL DOCUMENTS ATTACHED AS REQUIRED BY PARAGRAPHS 1, 2, AND 3, IMMEDIATELY ABOVE) IS DERIVED FROM RECORDS THAT WERE MADE AT OR NEAR THE TIME OF THE OCCURRENCE OF THE MATTERS SET FORTH BY, OR FROM INFORMATION TRANSMITTED BY, A PERSON WITH KNOWLEDGE OF THOSE MATTERS, WERE KEPT IN THE COURSE OF THE REGULARLY CONDUCTED ACTIVITY; AND WERE MADE BY THE REGULARLY CONDUCTED ACTIVITY AS A REGULAR PRACTICE.

I FURTHER CERTIFY THAT COPIES OF ANY TRANSACTIONAL DOCUMENTS ATTACHED TO THIS FORM AS REQUIRED BY PARAGRAPHS 1, 2 AND 3, IMMEDIATELY ABOVE, ARE TRUE AND ACCURATE COPIES OF THE ORIGINAL DOCUMENTS. I FURTHER CERTIFY THAT THE ORIGINAL DOCUMENTS ARE IN MOVANT'S POSSESSION, EXCEPT AS FOLLOWS:

## DECLARATION

I, _Michael J. Lima_ (NAME) THE _Managing Member_ (TITLE) OF SPECTRUM MORTGAGE HOLDINGS, LLC, HEREBY DECLARE (OR CERTIFY, VERIFY, OR STATE) PURSUANT TO 28 U.S.C. SECTION 1746 UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT BASED ON PERSONAL KNOWLEDGE OF THE MOVANT'S BOOKS AND BUSINESS RECORDS.

EXECUTED AT _Addison_ <CITY/TOWN>, _Texas_ <STATE> ON THIS _17th_ DAY OF _March_ <MONTH), 2020 <YEAR>.

NAME: _Michael J. Lima_
TITLE: _Managing Member_
MOVANT: _Spectrum Mortgage Holdings, LLC_
STREET ADDRESS: _15301 Spectrum Drive #405_
CITY, STATE AND ZIP CODE: _Addison, TX 75001_

C084A

# NOTE

NOVEMBER 20 , 19 97

NEW YORK
[City]

NEW YORK
[State]

322 EAST 120TH STREET, NEW YORK, NEW YORK 10029
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ ---223,250.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is
BNY MORTGAGE COMPANY, INC., a NEW YORK CORPORATION
. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of    7.375    %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the    FIRST    day of each month beginning on    JANUARY 1
19 98 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If on DECEMBER 1 , 2027 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date".

I will make my monthly payments at    440 MAMARONECK AVENUE, HARRISON, NEW YORK  10528
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ ---1,541.94

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment". When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    2.00    % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

*Page 1 of 2*

NEW YORK FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3233 10/91
ARCS#084 (12/91)LBR

EXHIBIT 2

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note, whether or not a lawsuit is brought, to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may require immediate payment in full if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person. However, Lender shall not require immediate payment in full if this is prohibited by federal law on the date of this Security Instrument.

If Lender requires immediate payment in full under this Paragraph 17, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is mailed or delivered. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEALS(S) OF THE UNDERSIGNED.

_____ (Seal)
SARAH SANDERS                    -Borrower

_____ (Seal)
LORRAINE SANDERS                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

*(Sign Original Only)*

EXHIBIT 2

# ALLONGE

Note Date:        11/20/1997

Note Amount:      $223,250.00

Borrower:         SARAH SANDERS

BNY Loan No.:     73900

The note identified above is hereby assigned to The Bank of New York.

Dated:   June 1, 2000

                                BNY MORTGAGE COMPANY, LLC,
                                **Successor in interest to BNY Mortgage
                                Company, Inc.**

                                By: _____
                                Diane Antonecchia, Assistant Treasurer

EXHIBIT 2

# ALLONGE

Note Date:     11/20/1997

Note Amount:    $223,250.00

Borrower:    **SARAH SANDERS**

BNY Loan No.:    **73900**

The note identified above is hereby assigned in accordance with a certain Agreement made between The Bank of New York and North Fork Bank.

Dated:  June 20, 2000

**THE BANK OF NEW YORK**

By: _____

Diane Antonecchia, Vice President

EXHIBIT 2

73900

---

FOR THE PURPOSES OF FURTHER ENDORSEMENT OF THE FOLLOWING DESCRIBED NOTE, THIS ALLONGE IS AFFIXED AND BECOMES A PERMANENT PART OF SAID NOTE.

Note Date:                November 20, 1997

Borrower:                 SARAH SANDERS AND LORRAINE SANDERS

Originating Lender:       BNY MORTGAGE COMPANY, INC

Property Address:         322 EAST 120TH STREET, NEW YORK, NY 10029

Loan Amount:              $233,250.00

Without Recourse Pay to the Order of:

Spectrum Mortgage Holdings, LLC

---

Capital One, N.A. as successor in interest by merger with North Fork Bank

Signor Name:    VERONICA NAVA
Signor Title:   ASSOCIATE

EXHIBIT 2

WHEN RECORDED MAIL TO:

ATTN: MORTGAGE SERVICING
BNY MORTGAGE COMPANY, INC.
440 MAMARONECK AVE. 2ND FLOOR
HARRISON, NY 10528

———————— [Space Above This Line For Recording Data] ————————

C151A

## CONSOLIDATION, EXTENSION AND MODIFICATION AGREEMENT

**WORDS USED OFTEN IN THIS DOCUMENT**

(A) "Agreement." This document, which is dated
attached to this document will be called the "Agreement."          NOVEMBER 20 , 19 97 , and exhibits and riders

(B) "Borrower."          SARAH SANDERS
                         LORRAINE SANDERS

will be called "Borrower" and sometimes "I" or "me." Borrower's address is
          322 EAST 120TH STREET, NEW YORK, NEW YORK 10029

(C) "Lender."     BNY MORTGAGE COMPANY, INC.., a NEW YORK CORPORATION
will be called "Lender" and sometimes "Note Holder." Lender is a corporation or association which exists under the laws of
THE STATE OF NEW YORK      , Lender's address is   440 MAMARONECK AVE. 2ND FLOOR
                                                   HARRISON, NY 10528
(D) "Mortgages." The mortgages, deeds of trust or other security instruments identified below and any additional security
instruments and related agreements identified in Exhibit A to this Agreement will be called the "Mortgages:"

(1) The Mortgage given by  SARAH SANDERS AND LORRAINE SANDERS

and dated      NOVEMBER 20, 1997         in favor of  BNY MORTGAGE COMPANY, INC.., a NEW YORK CORPORATION
securing the original principal amount of U.S. $        0.00        . This Mortgage is on a Fannie Mae/Freddie Mac
Security Instrument and [was recorded on            , 19      , in the
of                                    , State of   NEW YORK                                     ,
at
[will be recorded together with this Agreement.] [Strike and complete as appropriate.] At this date, the unpaid principal balance
secured by this Mortgage is U.S. $        0.00        . [Strike if not applicable.]

(2) The Mortgage given by EAST HARLEM RENEWAL HOMES HOUSING DEVELOPMENT FUND COMPANY,
and dated NOVEMBER 20, 1997      in favor of THE BANK OF NEW YORK
securing the original principal amount of U.S. $ 224,000, WHICH MORTGAGE WAS ASSIGNED PURSUANT TO THAT
CERTAIN ASSIGNMENT OF NOTE AND MORTGAGE DATED NOVEMBER 20, 1997, BY THE BANK OF NEW YORK
TO BNY MORTGAGE COMPANY, INC.., AS ASSIGNEE (THE MORTGAGE AND ASSIGNMENT ARE TO BE
RECORDED IMMEDIATELY PRIOR HERETO).
At this date, the unpaid principal balance secured by this Mortgage is U.S. $ 223,250.00          . [Strike if not applicable.]

(3) The Mortgage given by
and dated                              in favor of
securing the original principal amount of U.S. $                            . This Mortgage was recorded on
                        , 19      , in the Clerk's Office            of
State of     NEW YORK                     (Division of Land Records)
At this date, the unpaid principal balance secured by this Mortgage is U.S. $                . [Strike if not applicable.]

(E) "Note Holder." Lender or anyone who succeeds to Lender's rights under this Agreement and who is entitled to receive the
payments I agree to make under this Agreement may be called the "Note Holder."

(F) "Notes." The Notes identified below and any additional Notes and related obligations identified in Exhibit A to this
Agreement will be called the "Notes":
(1) The Note secured by the Mortgage identified in Section (D)(1) above and dated       NOVEMBER 20 , 19 97 .
(2) The Note secured by the Mortgage identified in Section (D)(2) above and dated       NOVEMBER 20 , 19 97 .
(3) The Note secured by the Mortgage identified in Section (D)(3) above and dated                 , 19      .

(G) "Property." The property which is described in the Mortgage(s) and in Exhibit B to this Agreement, will be called the
"Property." [Strike italics if not applicable.] The Property is located at:   322 EAST 120TH STREET
                                                                                          [Street]
          NEW YORK              ,          NEW YORK         ,    NEW YORK  10029
          [City]                           [County]                      [State and Zip code]

*Page 1 of 4*

Fannie Mae/Freddie Mac CONSOLIDATION, EXTENSION AND MODIFICATION AGREEMENT - Single Family          Form 3172  7/86
                                                                                                     #151 (03/96)

EXHIBIT 3

I promise and I agree with Lender as follows:

## I. BORROWER'S AGREEMENT ABOUT OBLIGATIONS UNDER THE NOTES AND MORTGAGES

I agree to take over all of the obligations under the Notes and Mortgages as consolidated and modified by this Agreement as Borrower. This means that I will keep all of the promises and agreements made in the Notes and Mortgages even if some other person made those promises and agreements before me. The total unpaid principal balance of the Notes is U.S. $      223,250.00 Of this amount, U.S. $   0.00   was advanced to me (or for my account) immediately prior to this consolidation.

## II. AGREEMENT TO COMBINE NOTES AND MORTGAGES

By signing this Agreement, Lender and I are combining into one set of rights and obligations all of the promises and agreements stated in the Notes and Mortgages including any earlier agreements which combined or extended rights and obligations under any of the Notes and Mortgages. This means that all of Lender's rights in the Property are combined so that under the law Lender has one mortgage and I have one loan obligation which I will pay as provided in this Agreement.

## III. THE CONSOLIDATED NOTE AND THE CONSOLIDATED MORTGAGE

This combining of notes and mortgages is known as a "consolidation." The Notes together will be called the "Consolidated Note." The Mortgages together will be called the "Consolidated Mortgage." The Consolidated Mortgage secures the Consolidated Note and is a single lien upon the Property. I have no right of set-off or counterclaim or defense to the obligations of the Consolidated Note or the Consolidated Mortgage.

## IV. AGREEMENT TO CHANGE TERMS OF THE CONSOLIDATED NOTE

Lender and I agree to change the terms of the Consolidated Note. The new terms are:

### 1. Borrower's Promise to Pay Principal and Interest

I promise to pay the principal that has not yet been paid under the Consolidated Note, plus interest, to the order of Lender. That principal amount is U.S. $   223,250.00  . Interest will be charged on unpaid principal as provided in this Agreement beginning on the date of this Agreement until the full amount of principal has been paid.

### 2. Payments

#### (A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on   JANUARY 1 19 99 . I will make these payments every month until I have paid all of the principal and interest and any other charges that I may owe under this Agreement and the Consolidated Note. My monthly payments will be applied to interest before principal. If on DECEMBER 1 , 2027 , I still owe amounts under this Agreement or the Consolidated Note, I will pay those amounts in full on that date, which is called the "maturity date."

I will make my monthly payments at   440 MAMARONECK AVE. 2ND FLOOR, HARRISON, NY 10528 or at a different place if required by the Note Holder.

#### (B) Interest Rate

I will pay interest at a yearly rate of   7.375 %. The interest rate required by this Section 2(B) is the rate I will pay both before and after any default described in Section 3(B) of this Consolidated Note. *An Adjustable Rate Rider is recorded with this Agreement as Exhibit C and is a term of this Agreement. The interest rate I will pay will change in accordance with that Rider. [Strike italics if not applicable.]*

#### (C) Monthly Payments

Each of my monthly payments will be in the amount of U.S. $   1,541.94  . An ☐ *Adjustable Rate or* ☐ *Graduated Payment or* ☐.   *Rider is recorded with this Agreement as Exhibit C and is a term of this Agreement. My monthly payment amount may change in accordance with that Rider. [Strike italics if not applicable.]*

### 3. Borrower's Failure to Pay as Required

#### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of   FIFTEEN calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   2.00   % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

#### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. I will also be in default if I do not keep my promises and agreements under this Agreement and the Consolidated Mortgage.

#### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

#### (D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

#### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

### 4. Borrower's Right to Prepay

#### (A) Borrower's Right to Make Prepayments

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

Fannie Mae/Freddie Mae CONSOLIDATION,EXTENSION AND MODIFICATION AGREEMENT- Single Family

Form 3172 7/86
#151 (03/96)

EXHIBIT 3



**(B) Cancellation of Other Prepayment Terms**

Any terms contained in the Consolidated Note about my right to make prepayments which do not agree with this Section 4 are cancelled by this Agreement. My right to make prepayments under the Consolidated Note is governed only by the terms contained in this Section 4.

**5. Loan Charges**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Lender may choose to make this refund by reducing the principal I owe under this Consolidated Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**6. Giving of Notices**

Any notice that must be given to me under this Consolidated Note will be given as provided in the Consolidated Mortgage.

**7. Waivers**

I and any other person who has obligations under this Consolidated Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

**8. Unchanged Terms of Consolidated Note in Full Effect**

All of the terms of the Consolidated Note that are not changed in this Agreement remain in full effect as if they were stated in this Agreement.

## V. AGREEMENT ON TERMS OF THE CONSOLIDATED MORTGAGE

Lender and I agree to change the terms of the Consolidated Mortgage. The new terms of the Consolidated Mortgage are the security instrument terms that are set out in Exhibit D to this Agreement. However, the terms of the Consolidated Mortgage prior to this change that are not inconsistent with the security instrument terms set out in Exhibit D shall also continue in effect.

## VI. BORROWER'S INTEREST IN THE PROPERTY

I promise that I am the lawful owner occupying the Property. I promise that I am a lawful tenant occupying the Property. (Strike inapplicable sentence.)

## VII. WRITTEN TERMINATION OR CHANGE OF THIS AGREEMENT

This Agreement may not be terminated, changed, or amended except by a written agreement signed by the party whose rights or obligations are being changed by that agreement.

## VIII. OBLIGATIONS OF BORROWERS AND OF PERSONS TAKING OVER BORROWER'S OR LENDER'S RIGHTS OR OBLIGATIONS

If more than one person signs this Agreement as Borrower, each of us is fully and personally obligated to keep all of Borrower's promises and obligations contained in this Agreement. The Note Holder may enforce its rights under this Agreement against each of us individually or against all of us together.

Lender and I agree that any person who takes over my rights or obligations under this Agreement will have all of my rights and will be obligated to keep all of my promises and agreements made in this Agreement. Similarly, any person who takes over Lender's rights or obligations under this Agreement will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Agreement.

By signing this Agreement, Lender and I agree to all of the above.

BNY MORTGAGE COMPANY, INC.
·Lender

By _Rosemarie Beyer_
**ROSEMARIE BEYER**
Assistant Vice President

_(signature)_
SARAH SANDERS
-Borrower

LORRAINE SANDERS
-Borrower

-Borrower

-Borrower

*Page 3 of 4*

Fannie Mae/Freddie Mac CONSOLIDATION,EXTENSION AND MODIFICATION AGREEMENT - Single Family

Form 3172  7/86
#151 (03/96)

—[Space Below This Line For Acknowledgments]—

EXHIBIT 3

# — INSTRUCTIONS —

The following instructions apply if this Agreement is used in a consolidation, extension or modification of a single family loan intended for possible sale to Fannie Mae or Freddie Mac.

(1) All notes, security instruments, the most recent consolidation agreement and related agreements that modify, consolidate or extend prior underlying obligations and which produce this Agreement must be listed in this Agreement or in an Exhibit to this Agreement.

(2) For sales of whole loans to Fannie Mae and Freddie Mac, the Seller/Lender must deliver the executed original of this Agreement and all exhibits to it (or a certified true copy from the recording clerk, if the original is not yet available), together with each original Note which is the original evidence of any part of Borrower's indebtedness set out in this Agreement.

(3) If new funds are advanced at the time of the consolidation and modification evidenced by this Agreement, the new obligation must be evidenced by a new note and a new mortgage on the current Fannie Mae/Freddie Mac Single Family Uniform Instruments. This new loan will then become a part of the Consolidated Note and the Consolidated Mortgage. It is not necessary that the repayment terms of the new loan, as set out in the new note, reflect the terms of the Consolidated Note; the applicable repayment terms for the total indebtedness are supplied by this Agreement (see Section IV).

(4) The dollar amount entered in the first blank in Section I and the dollar amount entered in the blank in Section IV(1) should be the same. The amount entered in the last blank in Section I should be completed with the dollar amount of the new loan, if any, made in connection with this consolidation. Enter a "zero" if no new loan was made in connection with this consolidation.

(5) The repayment terms of the Consolidated Note (e.g. the consolidated principal amount, the monthly principal and interest payment, the interest rate and provisions for any interest rate and monthly payment changes applicable to the consolidated obligation) are restated in this Agreement by completion of the appropriate blanks in Section IV. If the Consolidated Single Family loan has an adjustable interest rate (or other alternative mortgage loan provisions), the appropriate Fannie Mae or Freddie Mac Rider must be attached as Exhibit C to this Agreement and recorded together with it. The terms of the Consolidated Mortgage, as changed by this Agreement, must be the current version of the Uniform and Non-uniform Covenants from the security instrument for the appropriate jurisdiction, together with any applicable riders. These terms are supplied by means of Exhibits C (if any) and D to this Agreement.

Fannie Mae/Freddie Mac CONSOLIDATION, EXTENSION AND MODIFICATION AGREEMENT - Single Family

# EXHIBIT D

## NEW TERMS OF THE CONSOLIDATED MORTGAGE

Lender and I agree that the new terms of the Consolidated Mortgage as stated in Paragraph V of the Consolidation, Extension and Modification Agreement (the "Agreement") that I signed are as follows:

## WORDS USED OFTEN IN THIS DOCUMENT

(A) "Exhibit D" and "Security Instrument." This document, which is attached to and made a part of the Agreement, will be called "Exhibit D" and sometimes the "Security Instrument."

(B) "Borrower." ___Sarah Sanders & Lorraine Sanders___

___sometimes will be called "Borrower" and sometimes "I" or "me."___

(C) "Lender." BNY MORTGAGE COMPANY, INC. will be called "Lender."

(D) "Note." The Consolidated Note described in the Agreement to which this Exhibit D is attached will be called the "Note."

(E) "Property." The property that is described below in the section titled "Description of the Property," will be called the "Property."

(F) "Sums secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "sums secured."

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to Lender subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note;

(B) Pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 of this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument.

## DESCRIPTION OF THE PROPERTY

I give Lender rights in the Property described in (A) through (J) below:

(A) The Property which is located at__ 322 East 120th Street

___New York_____, New York ___10029___. This Property is in
[City]                              [Zip Code]

_____County.

9570 (2/88) EXHIBIT D to Fixed Rate Consolidation, Extension and Modification Agreement

EXHIBIT 3

LIBER 2588 PAGE 2272

(B) All buildings and other improvements that are located on the Property described in subparagraph (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subparagraph (A) of this section. These rights are known as easements and appurtenances attached to the Property;

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subparagraph (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subparagraphs (a) and (B) of this section;

(F) All of the rights and property described in subparagraphs (B) through (E) of this section and I acquire in the future; and

(G) All replacements of or additions to the Property described in subparagraph (B) through (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property, (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary, to a limited extent, in different parts of the country. My promises and agreements are stated of plain language.

NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

EXHIBIT 3

# COVENANTS

I promise and I agree with Lender as follows:

## 1. BORROWER'S PROMISE TO PAY

I will pay to Lender on time principal and interest due under the Note and any prepayment and late charges due under the Note.

## 2. MONTHLY PAYMENTS FOR TAXES AND INSURANCE

### (A) Borrower's Obligations

I will pay to Lender all amounts necessary to pay for taxes, assessments, water frontage charges and other similar charges, sewer rents, leasehold payments or ground rents (if any), hazard or property insurance covering the Property, and flood insurance (if any). If Lender required mortgage insurance as a condition of making the loan that I promise to pay under the Note, (i) I also will pay to Lender all amounts necessary to pay for mortgage insurance, and (ii) if, under Paragraph 8 below, instead of paying for mortgage insurance I am required to pay Lender an amount equal to the cost of mortgage insurance, I will pay this amount to Lender. I will pay all of those amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless the law requires otherwise. I will make these payments on the same day that my monthly payments of principal and interest are due under the Note.

My payments under this Paragraph 2 will be for the items listed in (i) through (vi) below, which are called "Escrow Items":
(i) The estimated yearly taxes, assessments, water frontage charges and other similar charges, and sewer rents on the Property which under the law may be superior to this Security Instrument as a lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "lien";
(ii) The estimated yearly leasehold payments or ground rents on the Property (if any);
(iii) The estimated yearly premium for hazard or property insurance covering the Property;
(iv) The estimated yearly premium for flood insurance covering the Property (if any);
(v) The estimated yearly premium for mortgage insurance (if any); and
(vi) The estimated yearly amount I may be required to pay Lender under Paragraph 8 below instead of the payment of the estimated yearly premium for mortgage insurance (if any).

Lender will estimate from time to time the amount I will have to pay for Escrow Items by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless the law requires Lender to use another method for determining the amount I am to pay. The amounts that I pay to Lender for Escrow Items under this Paragraph 2 will be called the "Funds." The Funds are pledged as additional security for all Sums Secured.

The law puts limits on the total amount of Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender for a "federally related mortgage loan" could require me to place in an "escrow account" under the federal law called the "Real Estate Settlement Procedures Act of 1974,"as that law may be amended from time to time. If there is another law that imposes a lower limit on the total amount of Funds Lender can collect and hold, Lender will be limited to the lower amount.

### (B) Lender's Obligations

Lender will keep the Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Funds. Except as described in this Paragraph 2, Lender will use the Funds to pay the Escrow Items. Lender will give to me, without charge, an annual accounting of the Funds. That accounting must show all additions to and deductions from the Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Funds, for using the Funds to pay Escrow Items, for making a yearly analysis of my payment of Funds or for receiving, verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Funds and if the law permits Lender to make such a charge. Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with my loan, unless the law does not permit Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Funds unless either (i) Lender and I agree in writing, at the time I sign this Security Instrument, that Lender will pay interest on the Funds; or (ii) the law requires Lender to pay interest on the Funds.

### (C) Adjustments to the Funds

Under the law, there is a limit on the amount of Funds Lender may hold. If the amount of Funds held by Lender exceeds this limit, then the law requires Lender to account to me in a special manner for the excess amount of Funds. There will be an excess amount if, at any time, the amount of Funds which Lender is holding or keeping is greater than the amount of Funds Lender is allowed to hold under the law.

NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3033 10/91
ARCS #148 (03/94) LBR

EXHIBIT 3

If, at any time, Lender has not received enough Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items in full. Lender will determine the number of monthly payments I have in which to pay that additional amount, but the number of payments will not be more than twelve.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Funds that are then being held by Lender. If, under Paragraph 21 below, Lender either acquires or sells the Property, then before the acquisition or sale, Lender will use any Funds which Lender is holding at the time of the acquisition or sale to reduce the Sums Secured.

## 3. APPLICATION OF BORROWER'S PAYMENTS

Unless the law requires otherwise, Lender will apply each of my payments under the Note and under Paragraphs 1 and 2 above in the following order and for the following purposes:
First, to pay any prepayment charges due under the Note;
Next, to pay the amounts due to Lender under Paragraph 2 above;
Next, to pay interest due;
Next, to pay principal due; and
Last, to pay any late charges due under the Note.

## 4. BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS

I will pay all taxes, assessments, water frontage charges and other similar charges, sewer rents, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will do this either by making the payments to Lender that are described in Paragraph 2 above or, if I am not required to make payments under Paragraph 2, by making the payments on time to the person owed them. (In this Security Instrument, the word "person" means any person, organization, governmental authority or other party.) If I make direct payments, then promptly after making any of those payments I will give Lender a receipt which shows that I have done so. If I make payment to Lender under Paragraph 2, I will give Lender all notices or bills that I receive for the amounts due under this Paragraph 4.

I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give Borrower a notice identifying the superior lien. Borrower shall pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

## 5. BORROWER'S OBLIGATION TO MAINTAIN HAZARD INSURANCE OR PROPERTY INSURANCE

I will obtain hazard or property insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage, including floods and flooding. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company, but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. If I do not maintain the insurance coverage described above, Lender may obtain insurance coverage to protect Lender's rights in the Property in accordance with Paragraph 7 below.

All of the insurance policies and renewals of those policies must include what is known as a "standard mortgage clause" to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "proceeds." The proceeds will be used to repair or to restore the damaged Property unless: (A) it is not economically feasible to make the repairs or restoration; or (B) the use of the proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (C) Lender and I have agreed in writing not to use the proceeds for that purpose. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the proceeds will be used to reduce the amount that I owe to Lender under the Note and under this Security Instrument. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me.

NEW YORK-Single Family-Fannie Mac/Freddie Mac UNIFORM INSTRUMENT

Form 3033 10/91
ARCS #148 (03/94) LBR

EXHIBIT 3

If I abandon the Property, or if I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may collect the proceeds. Lender may use the proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Note, that use will not delay the due date or change the amount of any of my monthly payments under the Note and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to those delays or changes.

If Lender acquires the Property under Paragraph 21 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those proceeds will not be greater than the Sums Secured immediately before the Property is acquired by Lender or sold.

## 6. BORROWER'S OBLIGATIONS TO OCCUPY THE PROPERTY, TO MAINTAIN AND PROTECT THE PROPERTY, AND TO FULFILL ANY LEASE OBLIGATIONS; BORROWER'S LOAN APPLICATION

### (A) Borrower's Obligations to Occupy the Property

I will occupy the Property and use the Property as my principal residence within sixty days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

### (B) Borrower's Obligations to Maintain and Protect the Property

I will keep the Property in good repair. I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate.

I will be "in default" under this Security Instrument if I fail to keep any promise or agreement made in this Security Instrument. I also will be in default under this Security Instrument if any civil or criminal action or proceeding for "forfeiture" (that is, a legal action or proceeding to require the Property, or any part of the Property, to be given up) is begun and Lender determines, in good faith, that this action or proceeding could result in a court ruling (i) that would require forfeiture of the Property or (ii) that would materially impair the lien of this Security Instrument or Lender's rights in the Property. I may correct the default by obtaining a court ruling that dismisses the legal action or proceeding, if Lender determines, in good faith, that this court ruling prevents forfeiture of my interests in the Property and also prevents any material impairment of (i) the lien created by this Security Instrument or (ii) Lender's rights in the Property. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Paragraph 18 below, even if Lender has required immediate payment in full.

### (C) Borrower's Obligations to Fulfill Any Lease Obligations

If I do not own but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

### (D) Borrower's Loan Application

If, during the application process for the loan that I promise to pay under the Note, I made false or inaccurate statements to Lender about information important to Lender in determining my eligibility for the loan, Lender will treat my actions as a default under this Security Instrument. False or inaccurate statements about information important to Lender would include a misrepresentation of my intentions to occupy the Property as a principal residence. This is just one example of a false or inaccurate statement of important information. Also, if during the loan application process I failed to provide Lender with information important to Lender in determining my eligibility for the loan, Lender will treat this as a default under this Security Instrument.

## 7. LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (such as a legal proceeding in bankruptcy, in probate, for condemnation or forfeiture, or to enforce laws or regulations), Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this Paragraph 7, Lender does not have to do so.

Form 3033 10/91
ARCS #148 (03/94) LBR

EXHIBIT 3

Ρ 2688 pg 2276

I will pay to Lender any amounts, with interest, which Lender spends under this Paragraph 7. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will also pay interest on those amounts at the Note rate. Interest on each amount will begin on the date that the amount is spent by Lender. However, Lender and I may agree in writing to terms of payment that are different from those in this paragraph. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

## 8. MORTGAGE INSURANCE

If Lender required mortgage insurance as a condition of making the loan that I promise to pay under the Note, I will pay the premiums for the mortgage insurance. If, for any reason, the mortgage insurance coverage lapses or ceases to be in effect, I will pay the premiums for substantially equivalent mortgage insurance coverage. However, the cost of this mortgage insurance coverage must be substantially equivalent to the cost to me of the previous mortgage insurance coverage, and the alternate mortgage insurer must be approved by Lender.

If substantially equivalent mortgage insurance coverage is not available, Lender will establish a "loss reserve" as a substitute for the mortgage insurance coverage. I will pay to Lender each month an amount equal to one-twelfth of the yearly mortgage insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the mortgage insurance would have covered. Lender may choose to no longer require loss reserve payments, if mortgage insurance coverage again becomes available and is obtained. The mortgage insurance coverage must be in the amount and for the period of time required by Lender. The Lender must approve the insurance company providing the coverage.

I will pay the mortgage insurance premiums, or the loss reserve payments, until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law. Lender may require me to pay the premiums, or the loss reserve payments, in the manner described in Paragraph 2 above.

## 9. LENDER'S RIGHT TO INSPECT THE PROPERTY

Lender, and others authorized by Lender, may enter on and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

## 10. AGREEMENTS ABOUT CONDEMNATION OF THE PROPERTY

A taking of property by any governmental authority by eminent domain is known as "condemnation." I give to Lender my right: (A) to proceeds of all awards or claims for damages resulting from condemnation or other governmental taking of the Property; and (B) to proceeds from a sale of the Property that is made to avoid condemnation. All of those proceeds will be paid to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me.

Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, and the fair market value of the Property immediately before the taking either is equal to, or greater than, the amount of the Sums Secured immediately before the taking, the amount that I owe to Lender will be reduced only by the amount of proceeds multiplied by a fraction. That fraction is as follows: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

Unless Lender and I agree otherwise in writing or unless the law requires otherwise, if only a part of the Property is taken, and the fair market value of the Property immediately before the taking is less than the amount of the Sums Secured immediately before the taking, the proceeds will be used to reduce the Sums Secured.

If I abandon the Property, or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Note, that use will not delay the due date or change the amount of any of my monthly payments under the Note and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to those delays or changes.

## 11. CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS
### (A) Borrower's Obligations

Lender may allow a person who takes over my rights and obligations to delay or to change the amount of the monthly payments of principal and interest due under the Note or under this Security Instrument. Even if Lender does this, however, that person and I will both still be fully obligated under the Note and under this Security Instrument.

NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3033 10/91
ARCS #148 (03/94) LBR

EXHIBIT 3

Lender may allow those delays or changes for a person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a person for not fulfilling obligations under the Note or under this Security Instrument, even if Lender is requested to do so.

**(B) Lender's Rights**
Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 21 below to demand that I make immediate payment in full of the amount that I owe to Lender under the Note and under this Security Instrument.

## 12. OBLIGATIONS OF BORROWER AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS
Any person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

If more than one person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (A) that person is signing this Security Instrument only to give that person's rights in the Property to Lender under the terms of this Security Instrument; and (B) that person is not personally obligated to pay the Sums Secured; and (C) that person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights or to modify or make any accommodations with regard to the terms of this Security Instrument or the Note without that person's consent.

## 13. LOAN CHARGES
If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

## 14. NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT
Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at the address stated in the section above titled "Description of the Property." A notice will be given to me at a different address if I give Lender a notice of my different address. Any notice that must be given to Lender under this Security Instrument will be given by mailing it to Lender's address stated in subparagraph (C) of the section above titled "Words Used Often In This Document." A notice will be mailed to Lender at a different address if Lender gives me a notice of the different address. A notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

## 15. LAW THAT GOVERNS THIS SECURITY INSTRUMENT
This Security Instrument is governed by federal law and the law that applies in the place where the Property is located. If any term of this Security Instrument or of the Note conflicts with the law, all other terms of this Security Instrument and of the Note will still remain in effect if they can be given effect without the conflicting term. This means that any terms of this Security Instrument and of the Note which conflict with the law can be separated from the remaining terms, and the remaining terms will still be enforced.

## 16. BORROWER'S COPY
I will be given one conformed copy of the Note and of this Security Instrument.

## 17. AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED
Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may require immediate payment in full if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person. However, Lender shall not require immediate payment in full if this is prohibited by federal law on the date of this Security Instrument.

If Lender requires immediate payment in full under this Paragraph 17, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is mailed or delivered. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

NEW YORK-Single Family-Fannie Mae, Freddie Mac UNIFORM INSTRUMENT

Form 3033 10/91
ARCS #148 (03/94) LBR

EXHIBIT 3

## 18. BORROWER'S RIGHT TO HAVE LENDER'S ENFORCEMENT OF THIS SECURITY INSTRUMENT DISCONTINUED

Even if Lender has required immediate payment in full, I may have the right to have enforcement of this Security Instrument discontinued. I will have this right at any time before sale of the Property under any power of sale granted by this Security Instrument or at any time before a judgment has been entered enforcing this Security Instrument if I meet the following conditions:

(A) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if immediate payment in full had never been required; and

(B) I correct my failure to keep any of my other promises or agreements made in this Security Instrument; and

(C) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees; and

(D) I do whatever Lender reasonably requires to assure that Lender's rights in the Property, Lender's rights under this Security Instrument, and my obligations under the Note and under this Security Instrument continue unchanged.

If I fulfill all of the conditions in this Paragraph 18, then the Note and this Security Instrument will remain in full effect as if immediate payment in full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required immediate payment in full under Paragraph 17 above.

## 19. NOTE HOLDER'S RIGHT TO SELL THE NOTE OR AN INTEREST IN THE NOTE; BORROWER'S RIGHT TO NOTICE OF CHANGE OF LOAN SERVICER

The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I may not receive any prior notice of these sales.

The entity that collects my monthly payments due under the Note and this Security Instrument is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note; there also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. The law requires that I be given written notice of any change of the Loan Servicer. The written notice must be given in the manner required under Paragraph 14 above and under applicable law. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by the law.

## 20. CONTINUATION OF BORROWER'S OBLIGATIONS TO MAINTAIN AND PROTECT THE PROPERTY

The federal laws and the laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection are called "Environmental Laws." I will not do anything affecting the Property that violates Environmental Laws, and I will not allow anyone else to do so.

Environmental Laws classify certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Paragraph 20. These are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Laws and the substances considered hazardous for purposes of this Paragraph 20 are called "Hazardous Substances."

I will not permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property, and I will not allow anyone else to do so. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. However, I may permit the presence on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property, and I may use or store these small quantities on the Property. In addition, unless the law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

If I know of any investigation, claim, demand, lawsuit or other action by the government or by a private party involving the Property and any Hazardous Substance or Environmental Laws, I will promptly notify the Lender in writing. If the government notifies me (or I otherwise learn) that it is necessary to remove a Hazardous Substance affecting the Property or to take other remedial actions, I will promptly take all necessary remedial actions as required by Environmental Laws.

## 21. LENDER'S RIGHTS IF BORROWER FAILS TO KEEP PROMISES AND AGREEMENTS

Except as provided in Paragraph 17 above, if all of the conditions stated in subparagraphs (A), (B) and (C) of this Paragraph 21 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "immediate payment in full."

NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3033 10/91

ARCS #148 (03/94) LBR

EXHIBIT 3

If Lender requires immediate payment in full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another person may acquire the Property. This is known as "foreclosure and sale." In any lawsuit for foreclosure and sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require immediate payment in full under this Paragraph 21 only if all of the following conditions are met:

(A) I fail to keep any promise or agreement made in this Security Instrument, including the promises to pay when due the Sums Secured.

(B) Lender sends to me, in the manner described in Paragraph 14 above, a notice that states:
    (i) The promise or agreement that I failed to keep;
    (ii) The action that I must take to correct that default;
    (iii) A date by which I must correct the default. That date must be at least 30 days from the date on which the notice is given;
    (iv) That if I do not correct the default by the date stated in the notice, Lender may require immediate payment in full, and Lender or another person may acquire the Property by means of foreclosure and sale;
    (v) That if I meet the conditions stated in Paragraph 18 above, I will have the right to have Lender's enforcement of this Security Instrument discontinued and to have the Note and this Security Instrument remain fully effective as if immediate payment in full had never been required; and
    (vi) That I have the right in any lawsuit for foreclosure and sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have.

(C) I do not correct the default stated in the notice from Lender by the date stated in that notice.

## 22. LENDER'S OBLIGATION TO DISCHARGE THIS SECURITY INSTRUMENT
When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will not be required to pay Lender for the discharge, but I will pay all costs of recording the discharge in the proper official records.

## 23. AGREEMENTS ABOUT NEW YORK LIEN LAW
I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that if, on the date this Security Instrument is recorded, construction or other work on any building or other improvement located on the Property has not been completed for at least four months, I will: (A) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a "trust fund"; and (B) use those amounts to pay for that construction or work before I use them for any other purpose. The fact that I am holding those amounts as a "trust fund" means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Paragraph 23.

## 24. RIDERS TO THIS SECURITY INSTRUMENT
If one or more riders are signed by Borrower and recorded together with this Security Instrument, the promises and agreements of each rider are incorporated as a part of this Security Instrument. [Check applicable box(es)]

|  |  |  |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☐ Other(s) [specify] |  |  |

NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3033 10/91
ARCS #148 (03/94) LBR

EXHIBIT 3

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 10 of this Security Instrument and in any rider(s) signed by me and recorded with it.

Witnesses:

_____        _____ [Seal]
                                                                                        -Borrower

                                                _____ [Seal]
                                                                                        -Borrower

                                                _____ [Seal]
                                                                                        -Borrower

                                                _____ [Seal]
                                                                                        -Borrower

Page    10   of   10

—————————————————————————[Space Below This Line For Acknowledgment]————————————————————

State of New York,
     On this                    day of                    , 19                County ss:
                                                           , before me personally came

me known and known to me to be the individual(s) described in and who executed the foregoing instrument, and  . . he  . .  duly acknowledged to
to me that   . . he  . .   executed the same.

                                                _____
                                                            Notary Public

NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3033 10/91
ARCS #148 (03/94) LBR

_____ (Space Below This Line Reserved For Lender and Recorder) _____

EXHIBIT 3

STATE OF NEW YORK ）
COUNTY OF WESTCHESTER ） ss:

On the  20TH  day of November,  1997, before me personally came ROSEMARIE BEYER, to me known, who being by me duly sworn, did depose and say that she has an address at 440 Mamaroneck Avenue, Harrison, New York  10528; that she is an ASSISTANT VICE PRESIDENT, the corporation described in and which executed the foregoing instrument and that she signed her name by order of the Board of Directors of said corporation.

_Susan K. Miles_

Notary Public

SUSAN K. MILES
Notary Public, State of New York
No. 01MI4610691
Qualified in Westchester County
Commission Expires Nov. 30, 1997

STATE OF NEW YORK ）
COUNTY OF New York ） ss:

On this 30 th day of November 1997, before me personally came Myrna Sanders and Lorraine Sanders to me known to be the individual(s) described in and who executed the foregoing instrument and duly acknowledged to me that he/she/they executed the same.

Notary Public

STANLEY S GELLER
Notary Public, State of New York
No. 4742931
Qualified in New York County
Commission Expires January 31, 1998

EXHIBIT 3

54

HRH 2 6 6 8 9 1 3 3 4

TITLE #: M224771

SECTION: 6

BLOCK: 1796

LOT: 43

PREMISES: 322 EAST 120th STREET

COUNTY: NY

UNIT:

I.D. NO.
BY _____

RECORD AND RETURN TO: SIO

MODIFICATION AGREEMENT

BNY MORTGAGE COMPANY INC.

440 MAMARONECK AVE 2nd Floor

HARRISON NY 10528

Attn: Mortgage Servicing

TITLE
SERVICE
NATIONWIDE

Lex Terrae Ltd
551 Madison Avenue, 9th Floor
New York, NY 10022
(212) 599-1900

SEC. 255
STATEMENT FILED

047803

EXHIBIT 3

M 6 00 76 25 E

Standard N.Y.B.T.U. Form 8000 * Note Mortgage

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT—THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY.

THIS MORTGAGE, made the 24th day of November, nineteen hundred and ninety-seven

BETWEEN   EAST HARLEM RENEWAL HOMES HOUSING DEVELOPMENT FUND COMPANY, a New York not-for-profit housing development fund corporation formed pursuant to the New York not-For-Profit Corporation Law and Article XI of the New York Private Housing Finance Law, having an office at c/o East Harlem Renewal Agency, 203 East 116th Street, New York, New York 10029

and   THE BANK OF NEW YORK, a New York banking corporation, having offices at One Wall Street, New York, New York 10286 , the mortgagee,

WITNESSETH, that to secure the payment of an indebtedness in the sum of   TWO HUNDRED TWENTY-FOUR THOUSAND AND NO/100 ($224,000.00)———————— , the mortgagor,
lawful money of the United States, to be paid  dollars,

with interest thereon to be computed from the date hereof, at the rate of
per centum per annum, and to be paid   percent,   on   ,

according to a certain bond, note or obligation bearing even date herewith, the mortgagor hereby mortgages to the mortgagee

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the   City of New York, County of New York, State of New York, having a street address of 322 East 120th Street, New York, New York and being more particularly described on Schedule A attached hereto and made a part hereof.

EXHIBIT 3

TOGETHER with all right, title and interest of the mortgagor in and to the land lying in the streets and roads in front of and adjoining said premises;

TOGETHER with all fixtures, chattels and articles of personal property now or hereafter attached to or used in connection with said premises, including but not limited to furnaces, boilers, oil burners, radiators and piping, coal stokers, plumbing and bathroom fixtures, refrigeration, air conditioning and sprinkler systems, wash-tubs, sinks, gas and electric fixtures, stoves, ranges, awnings, screens, window shades, elevators, motors, dynamos, refrigerators, kitchen cabinets, incinerators, plants and shrubbery and all other equipment and machinery, appliances, fittings, and fixtures of every kind in or used in the operation of the buildings standing on said premises, together with any and all replacements thereof and additions thereto;

TOGETHER with all awards heretofore and hereafter made to the mortgagor for taking by eminent domain the whole or any part of said premises or any easement therein, including any awards for changes of grade of streets, which said awards are hereby assigned to the mortgagee, who is hereby authorized to collect and receive the proceeds of such awards and to give proper receipts and acquittances therefor, and to apply the same toward the payment of the mortgage debt, notwithstanding the fact that the amount owing thereon may not then be due and payable; and the said mortgagor hereby agrees, upon request, to make, execute and deliver any and all assignments and other instruments sufficient for the purpose of assigning said awards to the mortgagee, free, clear and discharged of any encumbrances of any kind or nature whatsoever.

AND the mortgagor covenants with the mortgagee as follows:

1. That the mortgagor will pay the indebtedness as hereinbefore provided.

2. That the mortgagor will keep the buildings on the premises insured against loss by fire for the benefit of the mortgagee; that he will assign and deliver the policies to the mortgagee; and that he will reimburse the mortgagee for any premiums paid for insurance made by the mortgagee on the mortgagor's default in so insuring the buildings or in so assigning and delivering the policies.

3. That no building on the premises shall be altered, removed or demolished without the consent of the mortgagee.

4. That the whole of said principal sum and interest shall become due at the option of the mortgagee after default in the payment of any instalment of principal or of interest for fifteen days; or after default in the payment of any tax, water rate, sewer rent or assessment for thirty days after notice and demand; or after default after notice and demand either in assigning and delivering the policies insuring the buildings against loss by fire or in reimbursing the mortgagee for premiums paid on such insurance, as hereinbefore provided; or after default upon request in furnishing a statement of the amount due on the mortgage and whether any offsets or defenses exist against the mortgage debt, as hereinafter provided. An assessment which has been made payable in instalments at the application of the mortgagor or lessee of the premises shall nevertheless, for the purpose of this paragraph, be deemed due and payable in its entirety on the day the first instalment becomes due or payable or a lien.

5. That the holder of this mortgage, in any action to foreclose it, shall be entitled to the appointment of a receiver.

6. That the mortgagor will pay all taxes, assessments, sewer rents or water rates, and in default thereof, the mortgagee may pay the same.

7. That the mortgagor within five days upon request in person or within ten days upon request by mail will furnish a written statement duly acknowledged of the amount due on this mortgage and whether any offsets or defenses exist against the mortgage debt.

8. That notice and demand or request may be in writing and may be served in person or by mail.

9. That the mortgagor warrants the title to the premises.

10. That the fire insurance policies required by paragraph No. 2 above shall contain the usual extended coverage endorsement; that in addition thereto the mortgagor, within thirty days after notice and demand, will keep the premises insured against war risk and any other hazard that may reasonably be required by the mortgagee. All of the provisions of paragraphs No. 2 and No. 4 above relating to fire insurance and the provisions of Section 254 of the Real Property Law construing the same shall apply to the additional insurance required by this paragraph.

11. That in case of a foreclosure sale, said premises, or so much thereof as may be affected by this mortgage, may be sold in one parcel.

12. That if any action or proceeding be commenced (except an action to foreclose this mortgage or to collect the debt secured thereby), to which action or proceeding the mortgagee is made a party, or in which it becomes necessary to defend or uphold the lien of this mortgage, all sums paid by the mortgagee for the expense of any litigation to prosecute or defend the rights and lien created by this mortgage (including reasonable counsel fees), shall be paid by the mortgagor, together with interest thereon at the rate of six per cent per annum, and any such sums and the interest thereon shall be a lien on said premises, prior to any right, or title to, interest in or claim upon said premises attaching or accruing subsequent to the lien of this mortgage, and shall be deemed to be secured by this mortgage. In any action or proceeding to foreclose this mortgage, or to recover or collect the debt secured thereby, the provisions of law respecting the recovering of costs, disbursements and allowances shall prevail unaffected by this covenant.

EXHIBIT 3

13. That the mortgagor hereby assigns to the mortgagee the rents, issues and profits of the premises as further security for the payment of said indebtedness, and the mortgagor grants to the mortgagee the right to enter upon and to take possession of the premises for the purpose of collecting the same and to let the premises or any part thereof, and to apply the rents, issues and profits, after payment of all necessary charges and expenses, on account of said indebtedness. This assignment and grant shall continue in effect until this mortgage is paid. The mortgagee hereby waives the right to enter upon and to take possession of said premises for the purpose of collecting said rents, issues and profits, and the mortgagor shall be entitled to collect and receive said rents, issues and profits until default under any of the covenants, conditions or agreements contained in this mortgage, and agrees in case such rents, issues and profits in payment of principal and interest becoming due on this mortgage and in payment of taxes, assessments, sewer rents, water rates and carrying charges becoming due against said premises, but such right of the mortgagor may be revoked by the mortgagee upon any default, on five days' written notice. The mortgagee will not, without the written consent of the mortgagee, receive or collect rent from any tenant of said premises or any part thereof for a period of more than one month in advance, and in the event of any default under this mortgage will pay monthly in advance to the mortgagee, or to any receiver appointed to collect said rents, issues and profits, the fair and reasonable rental value for the use and occupation of said premises or of such part thereof as may be in the possession of the mortgagor, and upon default in any such payment will vacate and surrender the possession of said premises to the mortgagor, or to such receiver, and in default thereof may be evicted by summary proceedings.

14. That the whole of said principal sum and the interest shall become due at the option of the mortgagee: (a) after failure to exhibit to the mortgagee, within ten days after demand, receipts showing payment of all taxes, water rates, sewer rents and assessments; or (b) after the actual or threatened alteration, demolition or removal of any building on the premises without the written consent of the mortgagee; or (c) after the assignment of the rents of the premises or any part thereof without the written consent of the mortgagee; or (d) if the buildings on said premises are not maintained in reasonably good repair; or (e) after failure to comply with any requirement or order or notice of violation of law or ordinance issued by any governmental department claiming jurisdiction over the premises within three months from the issuance thereof; or (f) if on application of the mortgagee two or more fire insurance companies lawfully doing business in the State of New York refuse to issue policies insuring the buildings on the premises; or (g) in the event of the removal, demolition or destruction in whole or in part of any of the fixtures, chattels or articles of personal property covered hereby, unless the same are promptly replaced by similar fixtures, chattels and articles of personal property at least equal in quality and condition to those replaced, free from chattel mortgages or other encumbrances thereon and free from any reservation of title thereto; or (h) after thirty days' notice to the mortgagor, in the event of the passage of any law deducting from the value of land for the purposes of taxation any lien thereon, or changing in any way the taxation of mortgages or debts secured thereby for state or local purposes; or (i) if the mortgagor fails to keep, observe and perform any of the other covenants, conditions or agreements contained in this mortgage.

15. That the mortgagor will, in compliance with Section 13 of the Lien Law, receive the advances secured hereby and will hold the right to receive such advances as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.

16. That the execution of this mortgage has been duly authorized by the board of directors of the mortgagor.

This mortgage may not be changed or terminated orally. The covenants contained in this mortgage shall run with the land and bind the mortgagor, the heirs, personal representatives, successors and assigns of the mortgagor and all subsequent owners, encumbrancers, tenants and subtenants of the premises, and shall enure to the benefit of the mortgagee, the personal representatives, successors and assigns of the mortgagee and all subsequent holders of this mortgage. The word "mortgagor" shall be construed as if it read "mortgagors" and the word "mortgagee" shall be construed as if it read "mortgagees" whenever the sense of this mortgage so requires.

IN WITNESS WHEREOF, this mortgage has been duly executed by the mortgagor.

IN PRESENCE OF:

                          EAST HARLEM RENEWAL HOMES HOUSING
                          DEVELOPMENT COMPANY

                          By: _Cora Shelton_
                          Name: Cora Shelton
                          Title: President

EXHIBIT 3

HR 2688 PG 2261

OLD REPUBLIC
TITLE NO. M222081F

## SCHEDULE A - DESCRIPTION

ALL that certain plot, piece or parcel of land together with the buildings and improvements thereon erected, situate, lying and being in the Borough of Manhattan, County of New York, City and State of new York known and designated as Section 6 Lot 43 in Block 1796 on the Tax Map of New York County, as said map existed on July 6, 1977 bounded and described according to said map as follows:

BEGINNING at a point on the southerly side of East 120th Street distant 274 feet 6 inches easterly from the corner formed by the intersection of the southerly side of East 120th Street and the easterly side of 2nd Avenue;

RUNNING THENCE southerly parallel to 2nd Avenue 100 feet 11 inches;

THENCE easterly parallel to East 120th Street 16 feet 8 inches;

THENCE northerly parallel to 2nd Avenue 100 feet 11 inches to the southerly side of East 120th Street;

THENCE westerly along the southerly side of East 120th Street 16 feet 8 inches to the point or place of BEGINNING.

EXHIBIT 3

On the          day of
personally came

in me known to be the individual          described in and who
executed the foregoing instrument, and acknowledged that
executed the same.

personally came

to me known to be the individual          described in and who
executed the foregoing instrument, and acknowledged that
executed the same.

STATE OF NEW YORK, COUNTY OF *New York*
On the 24th day of *November* 19 97, before me
personally came   Cora Shelton
to me known, who, being by me duly sworn, did depose and
say that   he resides at No.   183 E. 96th Street,
New York, New York
that   she is the   President
of  East Harlem Renewal Homes HDFC

, the corporation described
in and which executed the foregoing instrument; that ~~he~~
knows the seal of said corporation; that the seal affixed
to said instrument is such corporate seal; that it was so
affixed by order of the board of directors of said corporation;
and that   he signed h~~is~~ name thereto by like order.

STATE OF NEW YORK, COUNTY OF
On the          day of                    19          , before me
personally came
the subscribing witness to the foregoing instrument, with
whom I am personally acquainted, who, being by me duly
sworn, did depose and say that   he resides at No.

that   he knows

described in and who executed the foregoing instrument;
that   he, said subscribing witness, was present, and saw
execute the same; and that   he, said witness,
at the same time subscribed h          name as witness thereto.

*[signature]*
STANLEY A. GELLER
Notary Public, State of New York
No. 4743031
Qualified in New York County
Commission Expires January 31, 19__

Mortgage
TITLE No. M24771

EAST HARLEM RENEWAL HOMES
HOUSING DEVELOPMENT FUND
COMPANY
TO
THE BANK OF NEW YORK

SECTION
BLOCK          1665
LOT            42
COUNTY OR TOWN   New York
312 EAST 104 ST.

RETURN BY MAIL TO:
Ernst, Marvin & Martin, LLP
120 Broadway
New York, New York 10271
Attn: Patrick A. McCartney, Esq.

File No.

FILE
SERVICE
NATIONWIDE
*Lex Terrae Ltd.*

EXHIBIT 3

SUBSTITUTE MORTGAGE

TITLE SERVICE NATIONWIDE

*Lex Terras Ltd.*

SEC ...
STATEMENT FILED

TITLE #: M224771
SECTION: 6
BLOCK: 1796
LOT: 43
PREMISES: 322 East 120 th St.
COUNTY: NEW YORK
UNIT:

RECORD AND RETURN TO:
EMMET MARVIN & MARTIN, LLP.
120 Broadway
NY NY
Attn: Patrick McCarthy Esq.

RECORDED TAX
NO MORE
$ TAX PAID

047001

RECORDED IN NEW YORK COUNTY

1998 AUG 26 P 1: 13

CITY REGISTER

EXHIBIT 3

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City
Register will rely on the information provided
by you on this page for purposes of indexing
this instrument. The information on this page
will control for indexing purposes in the event
of any conflict with the rest of the document.



2008011401688001001E218C

## RECORDING AND ENDORSEMENT COVER PAGE

| | |
|---|---|
| Document ID: 2008011401688001 | Document Date: 12-31-2007 |
| Document Type: ASSIGNMENT, MORTGAGE | Preparation Date: 01-14-2008 |
| Document Page Count: 1 | |

**PRESENTER:**
CLOSING USA
250 MILE CROSSING BOULEVARD
SUITE 4
ROCHESTER, NY 14624
585-454-1730
DS070028728

**RETURN TO:**
CLOSING USA
250 MILE CROSSING BOULEVARD
SUITE 4
ROCHESTER, NY 14624
585-454-1730
DS070028728

### PROPERTY DATA

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| MANHATTAN | 1796 | 43 | Entire Lot | | 322 EAST 120 STREET |

Property Type: DWELLING ONLY - 1 FAMILY

### CROSS REFERENCE DATA

MANHATTAN Year: 1998 Reel: 2688 Page: 2258

### PARTIES

**ASSIGNOR/OLD LENDER:**
BNY MORTGAGE COMPANY, LLC
440 MAMARONECK AVENUE, 2ND FLOOR
HARRISON, NY 10528

**ASSIGNEE/NEW LENDER:**
NORTH FORK BANK, A DIVISION OF CAPITAL ONE,
NA
C/O 7255 BAYMEADOWS WAY
JACKSONVILLE, FL 32256

### FEES AND TAXES

| Mortgage | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | |
| Taxable Mortgage Amount: | $ | 0.00 | | $ 0.00 |
| Exemption: | | | NYC Real Property Transfer Tax: | |
| TAXES: County (Basic): | $ | 0.00 | | $ 0.00 |
| City (Additional): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| Spec (Additional): | $ | 0.00 | | $ 0.00 |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |
| Recording Fee: | $ | 42.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

**RECORDED OR FILED IN THE OFFICE
OF THE CITY REGISTER OF THE
CITY OF NEW YORK**
Recorded/Filed 01-24-2008 13:03
City Register File No.(CRFN):
2008000032940

*Annette M Hill*

*City Register Official Signature*

EXHIBIT 4

739.00

## ASSIGNMENT OF MORTGAGE

KNOW THAT

BNY Mortgage Company, LLC successor in interest to BNY Mortgage Company, Inc., a corporation, organized and existing under the laws of the United States of America, having an office at 440 Mamaroneck Avenue, 2nd Floor, Harrison, NY 10528, Assignor,

in consideration of TEN AND 00/100 DOLLARS ($10.00) and other good and valuable consideration, paid by

North Fork Bank, a division of Capital One, N.A., having an office at c/o 7255 Baymeadows Way, Jacksonville, FL 32256, Assignee,

hereby assigns unto the assignee, a certain Mortgage dated November 20, 1997 made by East Harlem Renewal Homes Housing Development Fund Company to The Bank of New York in the principal sum of $224,000.00 and recorded in the New York County Office of the City Register on August 26, 1998 in Reel 2688 of Mortgages, page 2258. This mortgage was then assigned from The Bank of New York to BNY Mortgage Company, Inc. by Assignment recorded August 26, 1998 in Reel 2688, page 2264. This loan was then modified by Mortgage Modification Agreement made by Sarah Sanders and Lorraine Sanders to BNY Mortgage Company, Inc. recorded on August 26, 1998 in Reel 2688, page 2263.

This mortgaged premises are known as 322 East 120th Street, New York, NY 10029

This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

TOGETHER with the bond or note or obligation described in said mortgage, and the moneys due and to grow due thereon with the interest; TO HAVE AND TO HOLD the same unto the assignee and to the successors, legal representatives and assigns of the assignee forever.

The word "assignor" or "assignee" shall be construed as if it read "assignors" or "assignees" whenever the sense of this instrument so requires.

IN WITNESS WHEREOF, the assignor has duly executed this assignment, the 31st day of December in the year 2007.

BNY Mortgage Company, LLC successor in interest to BNY Mortgage Company, Inc.

BY

Ann Golio
Assistant Treasurer

STATE OF    NEW YORK    )
                                    )ss
COUNTY OF    WESTCHESTER    )

On the 31st day of December in the year 2007 before me, the undersigned, a Notary Public in and for said State, personally appeared Ann Golio , personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.

Sworn to before me this

31st day of December, 2007

Notary Public

RITA WOLF
Notary Public, State of New York
No. 01WO6157237
Qualified in Westchester County
Commission Expires December 4, 2010

SEAL

RECORD & RETURN TO:

Closing USA, LLC
Attn: Default
250 Mile Crossing Blvd., Ste. 4
Rochester, NY 14624

EXHIBIT 4

LBR 2608 PG 2264

## ASSIGNMENT OF NOTE AND MORTGAGE
(Substitute Note and Mortgage)

THE BANK OF NEW YORK, a New York banking corporation, having an office at One Wall Street, New York, New York 10286 ("Assignor"), in consideration of the sum of TWO HUNDRED TWENTY-FOUR THOUSAND and 00/100 ($224,000.00) Dollars and other good and valuable consideration, hereby assigns, transfers and set over unto BNY Mortgage Company, Inc. ("Assignee"), all right, title and interest of Assignor in and to the mortgage and note described on Exhibit A annexed hereto and made a part hereof, together with the debt relating thereto.

TO HAVE AND TO HOLD unto the Assignee, its successors and assigns forever.

This Assignment is made without any representation or warranty whatsoever, express or implied, by Assignor and upon the express condition, understanding and agreement that this Assignment is made without recourse to Assignor, for any cause whatsoever, by Assignee or by any successor to the interest of Assignee in said mortgage, note and collateral assignment of leases and rents.

IN WITNESS WHEREOF, Assignor has duly executed this Assignment as of the 20th day of November, 1997.

322 EAST 120th ST
NYC.

THE BANK OF NEW YORK

By: _____
    Gregory A. Reimers
    Vice President

I

pmm/91002/1998/322-docs/ass-notmtg

EXHIBIT 4

MR 2688 PG 2 265

## EXHIBIT A

Substitute Mortgage Note, dated as of November 20, 1997, made by East Harlem Renewal Agency payable to the order of The Bank of New York, in the principal sum of $224,000.00.

Substitute Mortgage No. 7, dated as of November 20, 1997, made by East Harlem Renewal Agency, as mortgagor, in favor of The Bank of New York, as mortgagee, in the principal sum of $224,000.00, intended to be recorded immediately prior hereto in the Office of the New York County Clerk.

EXHIBIT 4

STATE OF NEW YORK    )
                     )  ss:
COUNTY OF NEW YORK   )

On this 20th day of November, 1997, before me personally came Gregory R. Reimers, to me known, who being by me duly sworn, did depose and say that he resides at 919 Grove Street, Mamaroneck, New York; he is a Vice President of The Bank of New York, New York, the New York banking association described in and which executed the foregoing instrument; and that she signed her name thereto by order of the Board of Directors of said association.

_____
Notary Public

GERALDINE D. SUMNER
Notary Public, State of New York
No. 24-4901816
Qualified in Kings County
Commission Expires May 31, 1999

EXHIBIT 4

## AFFIDAVIT UNDER REAL PROPERTY LAW §275

STATE OF NEW YORK }
                                      } ss.:
COUNTY OF NEW YORK }

Cora Shelton, being duly sworn, deposes and says:

1. I am a President of East Harlem Renewal Homes Housing Development Fund Company ("Mortgagor"), the maker of that certain substitute mortgage, dated November 20, 1997, in the principal sum of $224,000.00, from the Mortgagor in favor of The Bank of New York (the "Assignor") intended to be recorded immediately prior hereto (the "Mortgage") covering the land and improvements located in the County of New York, State of New York, which are being assigned this date to BNY Mortgage Company, Inc. (the "Assignee"), pursuant to a certain assignment, dated the date hereof, from Assignor to the Assignee and I am familiar with the facts herein.

2. The Assignee is not acting as nominee of the Mortgagor set forth in the Mortgage.

3. This Affidavit is made pursuant to Section 275 of the Real Property Law of the State of New York for the purpose of effectuating the assignment of the Mortgage by Assignor to Assignee.

*Cora Shelton*
Cora Shelton

Sworn to before me this
20th day of November, 1997

*J. J. Geller*
Notary Public

STANLEY J. GELLER
Notary Public, State of New York
No. 4742931
Qualified in New York County
Commission Expires January 31, 1998

p:nov991012/2998/322-docs/275-aff

EXHIBIT 4

63.

EG 2 0 8 0 1 8 2 2 5 6

ASSIGNMENT OF NOTE AND MORTGAGE

TITLE SERVICE NATIONWIDE

*Lex Terras Ltd.*
551 Madison Avenue, 6th Floor
New York, NY 10022
[tel] 390-1200

( 53 )

∑ 11.2

OFFER RTDE 0528          047602

TITLE #: M224771

SECTION: 6

BLOCK: 1796

LOT: 43

PREMISES: 322 EAST 120 th ST.

COUNTY: NY

UNIT:

RECORD AND RETURN TO: ___ 1D

WADSWORTH & HUNTER          50

444 MADISON AVE

NY NY

Att: DEXTER WADSWORTH ESQ.

RECORDED IN NEW YORK COUNTY

1998 AUG 26 P 1: 13

CITY REGISTER

EXHIBIT 4

## NYC DEPARTMENT OF FINANCE
### OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2018010400183001001E8929

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 4 |
|---|---|

**Document ID:** 2018010400183001  **Document Date:** 12-29-2017   **Preparation Date:** 01-04-2018
**Document Type:** ASSIGNMENT, MORTGAGE
**Document Page Count:** 2

| PRESENTER: | RETURN TO: |
|---|---|
| NATIONWIDE TITLE CLEARING INC.<br>2100 ALT 19 NORTH<br>PALM HARBOR, FL 34683<br>SUPPORT@SIMPLIFILE.COM | CAPITAL ONE, N.A.<br>C/O NATIONWIDE TITLE CLEARING, INC. 2100 ALT. 19 N<br>ORTH<br>PALM HARBOR, FL 34683<br>SUPPORT@SIMPLIFILE.COM |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 1796 | 43 | Entire Lot | 322 EAST 120 STREET |

**Property Type:** APARTMENT BUILDING

### CROSS REFERENCE DATA

MANHATTAN   **Year:** 1998   **Reel:** 2688   **Page:** 2258

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| CAPITAL ONE, N.A., A NATIONAL ASSOCIATION<br>7933 PRESTON RD<br>PLANO, TX 75024 | SPECTRUM MORTGAGE HOLDINGS, LLC<br>15301 SPECTRUM DRIVE SUITE 405<br>ADDISON, TX 75001 |

☒ Additional Parties Listed on Continuation Page

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ 0.00 |
| TAXES:   County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |
| Recording Fee: | $ | 47.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed   01-04-2018 12:36
City Register File No.(CRFN):
**2018000004271**

*Annette M Hill*

*City Register Official Signature*

EXHIBIT 4


| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | | PAGE 2 OF 4 |
|---|---|---|
| Document ID: 2018010400183001 | Document Date: 12-29-2017 | Preparation Date: 01-04-2018 |
| Document Type: ASSIGNMENT, MORTGAGE | | |

**PARTIES**

**ASSIGNOR/OLD LENDER:**
NORTH FORK BANK
7933 PRESTON RD
PLANO, TX 75024

EXHIBIT 4

When Recorded Return To:
Capital One, N.A.
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **CAPITAL ONE, N.A., A NATIONAL ASSOCIATION SUCCESSOR IN INTEREST UPON MERGER WITH NORTH FORK BANK, WHOSE ADDRESS IS 7933 PRESTON RD., PLANO, TX 75024, (ASSIGNOR),** by these presents does convey, grant, assign, transfer and set over the described Mortgage, as the same has not been consolidated, extended or modified, with all interest secured thereby, all liens, and any rights due or to become due thereon to **SPECTRUM MORTGAGE HOLDINGS, LLC, A TEXAS LIMITED LIABILITY COMPANY, WHOSE ADDRESS IS 15301 SPECTRUM DRIVE, ATTN: CORRESPONDENT COLLATERAL, SUITE 405, ADDISON, TX 75001, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Mortgage is dated 11/20/1997, made by **EAST HARLEM RENEWAL HOMES HOUSING DEVELOPMENT FUND COMPANY** to **THE BANK OF NEW YORK**, in the principal sum of $224,000.00 and recorded on 08/26/1998, in **Reel 2688 and Page 2258**, in the office of the Registry of **NEW YORK** County, **NY**.

Property is commonly known as: 322 EAST 120TH STREET,
NEW YORK, NY 10029.

See Exhibit attached for Assignments, Modifications etc.

This Assignment is not subject to the requirements of section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

**Dated this 29th day of December in the year 2017.**
**CAPITAL ONE, N.A., A NATIONAL ASSOCIATION SUCCESSOR IN INTEREST UPON MERGER WITH NORTH FORK BANK**

_Melissa Forant_
Melissa Forant

**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

**KRISTOPHER SANDBERG**
**WITNESS**

STATE OF FLORIDA    COUNTY OF PINELLAS
Before me, this 29th day of December in the year 2017, the undersigned, personally appeared **Melissa Forant** as VICE PRESIDENT for **CAPITAL ONE, N.A., A NATIONAL ASSOCIATION SUCCESSOR IN INTEREST UPON MERGER WITH NORTH FORK BANK**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that they executed the same in their capacity(ies), and that by their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

**NICOLE SHIELDS**

**COMM EXPIRES: 08/05/2020**



NICOLE SHIELDS
Notary Public - State of Florida
My Comm. Expires August 5, 2020
Commission # GG126925

EXHIBIT 4



Exhibit

Modification: EAST HARLEM RENEWAL HOMES HOUSING DEVELOPMENT FUND COMPANY TO THE BANK OF NEW YORK DATED 06-27-1997, REC: 03-19-2001 BK 3254 PG 1768

Modification: EAST HARLEM RENEWAL HOMES HOUSING DEVELOPMENT FUND COMPANY TO THE BANK OF NEW YORK DATED 11-07-1997, REC: 03-19-2001 BK 3254 PG 1784

Assignment: THE BANK OF NEW YORK TO BNY MORTGAGE COMPANY, INC. DATED 11-20-1997, REC: 08-26-1998 BK 2688 PG 2364

Modification: SARAH SANDERS AND LORRAINE SANDERS TO BNY MORTGAGE COMPANY, INC. DATED 11-20-1997, REC: 08-26-1998 BK 2688 PG 2269

Assignment: BNY MORTGAGE COMPANY, LLC SUCCESSOR IN INTEREST TO BNY MORTGAGE COMPANY, INC. TO NORTH FORK BANK, A DIVISION OF CAPITAL ONE, N.A. DATED 12-31-2007, REC: 01-24-2008 INSTR# 20080000032940



EXHIBIT 4

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT: __Hon. Judith N. McMahon__
__J.S.C.__                                         PART _____

_____
Justice

Index Number : 850286/2014                          INDEX NO. _____
CAPITAL ONE, NATIONAL
                                                    MOTION DATE _____
vs
SANDERS, SARAH                                      MOTION SEQ. NO. _____
Sequence Number : 002
JUDGMENT OF FORECLOSURE & SALE

The following papers, numbered 1 to _____ , were read on this motion to/for _____

Notice of Motion/Order to Show Cause — Affidavits — Exhibits _____ | No(s). _____

Answering Affidavits — Exhibits _____ | No(s). _____

Replying Affidavits _____ | No(s). _____

Upon the foregoing papers, it is ordered that this motion is

It's motion granted in accordance
with the attached order.

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE
FOR THE FOLLOWING REASON(S):

Dated: __3/27/18__                                                        _____, J.S.C.

Hon. Judith N. McMahon
J.S.C.

1. CHECK ONE: ......................................................................... ☑ CASE DISPOSED       ☐ NON-FINAL DISPOSITION

2. CHECK AS APPROPRIATE: ...........................MOTION IS: ☑ GRANTED  ☐ DENIED  ☐ GRANTED IN PART  ☐ OTHER

3. CHECK IF APPROPRIATE: ................................................ ☐ SETTLE ORDER        ☐ SUBMIT ORDER

☐ DO NOT POST   ☐ FIDUCIARY APPOINTMENT   ☐ REFERENCE

EXHIBIT 5

At Part      of the Supreme Court of the
State of New York held in and for the
County of New York, at the Courthouse
thereof, at New York, New York, on
Ｍａｒｃｈ ２７          , 2018.

Hon. Judith N. McMahon
J.S.C.

Present:_____ . _     _ _ ___._____  ____

Capital One, National Association,

                        Plaintiff,

   -against-

Sarah Sanders; Lorraine Sanders; City of New York
Environmental Control Board; City of New York Parking
Violations Bureau; City of New York Transit Adjudication
Bureau; Ms. Johnson; "John Doe",

                  Defendants.

**JUDGMENT OF
FORECLOSURE AND
SALE**

Index No. 850286/2014

Our File No.: 07-62955

**Premises:**
322 East 120th Street
New York, NY 10029

**Block 1796 Lot 43**

ON the Summons, Complaint and Notice of Pendency duly filed in this action on

September 22, 2014, on the Additional Notice of Pendency filed on July 24, 2017, and all

proceedings thereon; and on reading and filing the Notice of Motion dated

_ __ _____           _ , 2018 and Affirmation of Regularity of Alexander Phengsiaroun, Esq.

dated _____     _ ____. 2018, with exhibits annexed thereto, showing that all

Defendant(s) were duly served pursuant to the laws of the State of New York with a copy of the

Summons in this action, or have voluntarily appeared by their respective attorneys; and on the

proof of service upon and appearance, if any, by the Defendant(s) herein heretofore filed in this

action; and stating that more than the legally required number of days have elapsed since said

Defendant(s) were so served; and that none of the Defendant(s) have served an answer to said

07-62955                   Judgment of Foreclosure and Sale

EXHIBIT 5

Complaint, nor has their time to do so been extended; except for Defendant(s), Sarah Sanders, and

ON the Order Granting Summary Judgment signed and entered on September 21, 2015, appointing Lawrence B. Goodman, Esq. as Referee in this action to ascertain and compute the amount due, and to examine the Plaintiff or its agent on oath as to the allegations of the complaint, and to examine and report whether the mortgaged premises should be sold in one or more parcels;

AND on reading and filing of the oath and report of the aforesaid Referee sworn to and dated December 11, 2017, it appears that the sum of $303,907.61 was due the Plaintiff, as of May 15, 2017, plus a per diem interest for every day thereafter, on the date of said Report and that the mortgaged premises should be sold in one parcel.

NOW, on motion of Shapiro, DiCaro & Barak, LLC, the attorneys for the Plaintiff, it is

ORDERED, ADJUDGED AND DECREED that the caption be amended to drop Ms.

Johnson and "John Doe", as necessary party Defendants; and it is further

ORDERED, ADJUDGED AND DECREED that the caption be amended to read as

follows:

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Capital One, National Association,

Index No. 850286/2014

Plaintiff,

-against-

Sarah Sanders; Lorraine Sanders; City of New York
Environmental Control Board; City of New York
Parking Violations Bureau; City of New York Transit
Adjudication Bureau;

Defendants.

and it is further

07-62955                           Judgment of Foreclosure and Sale

EXHIBIT 5

ORDERED, that the motion is granted; and it is further

ORDERED, ADJUDGED AND DECREED that the report of Lawrence B. Goodman,

Esq. dated December 11, 2017, be, and the same is hereby, in all respects, ratified and confirmed;

and it is further

ORDERED, ADJUDGED AND DECREED that by accepting this appointment the

referee certifies that they are in compliance with Part 36 of the Rules of the Chief Judge (22

NYCRR Part 36), including, but not limited to, § 36.2(c) ("Disqualifications from

appointment"), and § 36.2 (d) ("Limitations on appointments based upon compensation"); and it

is further

ORDERED, ADJUDGED, AND DECREED that the mortgaged premises (Block 1796

Lot 43) as further described in the complaint in this action and hereinafter described, or such part

thereof as may be sufficient to discharge the mortgage debt under the note and mortgage, the

expenses of the sale and the costs of this action as provided by the Real Property Actions and

Proceeding Law be sold, in one parcel, at public auction ⸱                    _at 60_

Centre Street, ⸱           , New York , within ninety (90) days of the entry of this Judgment by

and under the direction of Lawrence B. Goodman, Esq., who is hereby appointed Referee for that

purpose; that said Referee give public notice of the time and place of such sale in accordance

with law, practice of this Court and RPAPL § 231 in _New York Law Journal_

and that the Plaintiff or any other party to this action may become the purchaser at such sale; that

in case the plaintiff shall become the purchaser at the said sale, they shall not be required to

make any deposit thereon; that said Referee execute to the purchaser or purchasers on such sale a

deed of the premises sold; that in the event a party other than the plaintiff becomes the purchaser

or purchasers at such sale they shall be required to tender a deposit of 10% of the purchase price

07-62955                    Judgment of Foreclosure and Sale

EXHIBIT 5

in certified funds and that all deed stamps, transfer taxes and recording fees, if any, shall be paid by the purchaser, and the closing of title shall be had thirty days after such sale unless otherwise stipulated by all parties to the sale and if such closing is required, and the Referee seeks and is awarded additional fees for said closing, those fees shall be paid by purchaser; and it is further

ORDERED, ADJUDGED AND DECREED, that said Referee on receiving the proceeds of the sale, shall forthwith pay therefrom, in accordance with their priority according to law, the taxes, assessments, sewer rents or water rates which are or may become liens on the premises at the time of sale with such interest or penalties which may have lawfully accrued thereon to the date of payment; and it is further

ORDERED, ADJUDGED AND DECREED, that said Referee then deposit the balance of said proceeds of sale in his/her own name as Referee in _Citibank 2 Mott St NY NY 10013_ and shall thereafter make the following payments and his/her checks drawn for that purpose shall be paid by said depository;

FIRST: That statutory fees of the Referee in the sum of $500.00.

SECOND: The expenses of sale and the advertising expenses as shown on the bills presented and certified by said Referee to be correct, duplicate copies of which shall be annexed to the report of sale and filed with said Depository and Clerk of this Court.

THIRD: Said Referee shall also pay to the plaintiff or plaintiff's attorney, the sum of $2,885.00 to be determined by the Clerk and adjudged to the Plaintiff for costs and disbursements in this action or as taxed by the Clerk on the Costs of Plaintiff and inserted therein, with interest thereon from the date hereof; together with reasonable attorneys' fees in the sum of $5825.00

07-62955                              Judgment of Foreclosure and Sale

EXHIBIT 5

provided for in paragraph 21 of the mortgage, and also the sum of $303,907.61 the said amount so reported due as aforesaid, together with contractual interest thereon from May 15, 2017, the date interest was calculated to in said report to the date of entry of the Judgment and legal interest thereafter, or so much thereof as the purchase money of the mortgaged premises will pay of the same, together with any advances necessarily paid by the Plaintiff for taxes, fire insurance, principal and interest to prior mortgages to preserve and or maintain the premises not previously included in any computations, said expenses being substantiated by proper receipts therefore.

FOURTH:    If such Referee intends to apply for a further allowance for fees, an application shall be made to the court therefore upon due notice to those parties entitled thereto.

That in case the plaintiff be the purchaser of said mortgaged premises at said sale, or in the event that the rights of the purchasers at said sale and the terms of sale under the judgment shall be assigned to and be acquired by the plaintiff, and a valid assignment thereof filed with said Referee, said Referee shall not require the plaintiff to pay in cash the entire amount bid at said sale, but shall execute and deliver to the plaintiff or its assignee, a deed or deeds of the premises sold upon the payment to said Referee of the amount specified above in items marked "FIRST" and "SECOND" and the amounts of the aforesaid taxes, assessments, sewer rents and water rates, with interest and penalties thereon, or in lieu of the payment of said last mentioned amounts, upon filing with said Referee receipts of the proper municipal authorities showing payment thereof; that the balance of the amount bid, after deducting therefrom the aforesaid

07-62955

Judgment of Foreclosure and Sale

EXHIBIT 5

amounts paid by the plaintiff for Referee's fees, advertising expenses, taxes, assessments, sewer rents and water rates shall be allowed to the Plaintiff and applied by said Referee upon the amounts due to the plaintiff as specified in item marked **"THIRD"**; that if after so applying the balance of the amount bid, there shall be a surplus over and above the said amounts due to the plaintiff, the plaintiff shall pay to the said Referee, upon delivery to plaintiff of said Referee's deed, the amount of such surplus; that said Referee on receiving said several amounts from the plaintiff shall forthwith pay therefrom said taxes, assessments, sewer rents, water rates, with interest and penalties thereon, unless the same have already been paid, and shall then deposit the balance in the hereinbefore designated Depository.

The said Referee shall take the receipt of the Plaintiff or the attorneys for the Plaintiff for the amounts paid as directed in item **"THIRD"** above, and file it with the report of sale; that surplus monies be deposited, if any, with the New York County Clerk within five days after the same shall be received and be ascertainable, to the credit of this action, to be withdrawn only on an order of this Court, signed by a Justice of this Court. The Referee shall make the report of such sale under oath showing the disposition of the proceeds of the sale and accompanied by the vouchers of the persons to whom payments were made, and shall file it with the New York County Clerk within thirty days after completing the sale and executing the proper conveyance to the purchaser and that if the proceeds of such sale be insufficient to pay the amount reported due to the Plaintiff with interest and costs as aforesaid, the Plaintiff shall recover from the Defendant(s), Sarah Sanders and Lorraine Sanders, unless discharged in bankruptcy, the whole deficiency or so much thereof as this Court may determine to be just and equitable of the residue of the mortgage debt remaining unsatisfied after a sale of the mortgaged premises and the application of the proceeds thereof, provided a motion for a deficiency judgment shall be made

07-62955

Judgment of Foreclosure and Sale

EXHIBIT 5

as prescribed by § 1371 of the Real Property Actions and Proceedings Law within the time limited therein, and the amount thereof if determined and awarded by an Order of this Court as provided for in said section; and it is further

ORDERED, ADJUDGED AND DECREED that each and all of the Defendant(s) in this action and all persons claiming under them, or any or either of them, after the filing of such notice of pendency of this action, be and they are hereby forever barred and foreclosed of all right, claim, lien, title, interest, and equity of redemption in said mortgaged premises and each and every part thereof; and it is further

ORDERED, ADJUDGED AND DECREED, that said premises is to be sold in one parcel in "as is" physical order and condition, subject to any state of facts that an inspection of the premises would disclose; any state of facts than an accurate survey of the premises would show, any covenants, restrictions, declarations, reservations, easements, rights of way and public utility agreement of record, if any; any building and zoning ordinances of the municipality in which the mortgaged premises is located and possible violations of same; any rights of tenants or persons in possession of the subject premises; prior lien(s) of record, if any, except those liens addressed in § 1354 of the Real Property Actions and Proceeding Law; any equity of redemption of the UNITED STATES OF AMERICA to redeem the premises within 120 days from date of sale; and it is further; and it is further

ORDERED, that a copy of this Judgment with Notice of Entry shall be served upon the Referee in this matter, the **owner of the equity of redemption**, any **tenants** named in this action and any other party entitled to notice.

ORDERED, ADJUDGED AND DECREED, that transfer tax is not a lien upon the Property or an expense of sale, but rather an expense of recording the deed. All expenses of

07-62955

Judgment of Foreclosure and Sale

EXHIBIT 5

recording the Referee's Deed shall be paid by the purchaser and not the Referee from sale proceeds.

**ORDERED, ADJUDGED AND DECREED**, that for purposes of statutory compliance with RPAPL 1351(1), the date of the Judgment of Foreclosure and Sale shall be deemed to be the date of entry of the Judgment of Foreclosure and Sale.

Said premises commonly known as 322 East 120th Street, New York, NY 10029. A description of said mortgaged premises is annexed hereto and made a part hereof as Schedule A.

E-MAIL PSOLONKA@NYCOURTS.GOV
WITHIN 60 DAYS OF THE DATE OF THIS
ORDER TO SCHEDULE THE SALE

[INTENTIONALLY BLANK]

Attorney certification pursuant
to 22NYCRR § 130-1.1-a
is affixed to inside cover.

07-62955

Judgment of Foreclosure and Sale

EXHIBIT 5

AND IT IS FURTHER

ORDERED that unless the adjournment of the sale is at the referee's request, any adjournment made with less than 48 hours of notice shall require an additional fee to the referee of $250 for each and every such adjournment without any further Court order necessary, and it is further

ORDERED that, without further order of the Court, the referee shall be entitled to an additional fee of $950 for conducting and attending a closing with a purchaser other than plaintiff, plus, if such a closing is scheduled for the referee's conference room, then the referee shall be entitled to a reasonable fee for use thereof, also without further order of the Court and it is further

ORDERED that the referee need not conduct the sale unless plaintiff shall provide the referee with proof of publication of the notice of sale, and if the sale is adjourned due to plaintiff's failure to provide such proof, then said adjournment shall not be considered at the referee's request;

ORDERED that plaintiff shall serve this order on the appropriate court clerks and the county clerk so they may amend the caption as set forth herein in their records.

A description of the premises is annexed hereto as exhibit A.

New York, New York
Date: 3|27|18

_____
Judith N. McMahon
Justice of the Supreme Court

Hon. Judith N. McMahon
J.S.C.

EXHIBIT 5

**SERVICELINK** 

Reference ID: 0000073909

SEARCH NO. EAGE 1018518

[ ] : 140041983

### Schedule A- Description of the Premises

ALL that certain plot, piece or parcel of land together with the buildings and improvements thereon erected, situate, lying and being in the Borough of Manhattan, County of New York , City and State of New York known and designated as Section 6 Block 1796, Lot 43, on the Tax Map of New York according to said map as follo...:

BEGINNING at a point on the s ... " 1 9 9ᵗʰ Street distant 274 feet 6 inches easterly from the corner formed by the ... ... ... northerly side of East 120ᵗʰ Street and the easterly side of 2ᵈᵗ Avenue ...:

RUNNING THENCE southerly parallel to 2 ᵈ Avenue 100 feet 11

THENCE easterly parallel to East 120 ᵗʰ Street 16 feet 8 inches;

THENCE ... ... parallel ... Avenue ... ... ... the ... ... of East 120ᵗʰ Street ...

THENCE westerly along the ... ... side of East 120ᵗʰ Street 16 feet 8 inches to the point or place of BEGINNING.

... ... ... ... ... ... k (... of Manhattan) New York County
TAX ACCT. NO. Block 1796 Lot 43

EXHIBIT 5

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK - MANHATTAN DIVISION

-------------------------------------------------------------X    Case No. 19-13848-cgm

In Re:
                                                                  Chapter 13

SARAH ELIZABETH SANDERS,

                        Debtor.

-------------------------------------------------------------X

## MEMORANDUM OF LAW

Point 1

## The Creditor is entitled to relief from the automatic stay as requested in the within motion

The Creditor has filed a Motion for Relief from the Automatic Stay as it concerns the mortgage it holds on the real property owned by the Debtor.

Section 362 (d)(1) provide as follows:

(d) On request of a party in interest and after notice and a hearing, the Court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay.

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

(2) with respect to a stay of an act against property under subsection (a) of this section, if:

(A) such property is not necessary to an effective reorganization; or

(3) Section 362 (d) is mandatory, not permissive. The Court shall grant relief from the stay for any of the reasons stated in the three subsections. **In re Elmira Litho, Inc.**, 174 Bankr. 892, 900 (Bankr. S.D.N.Y. 1994); **In re Touloumis**, 170 Bankr. 825, 827 (Bankr. S.D.N.Y. 1994); **In re Kleinman**, 156 Bankr. 131, 136 (Bankr. S.D.N.Y. 1993). Further, if any of the grounds for relief from stay apply, the Court must grant the relief from the stay.

The bankruptcy court can retroactively validate a void act by annulling the automatic stay. See Eastern Refractories Co., 157 F.3d at 172. Several factors inform the Court's decision: (1) whether the creditor had actual or constructive knowledge of the bankruptcy filing and, therefore, of the stay; (2) whether the debtor has acted in bad faith; (3) whether there was equity in the property of the estate; (4) whether the property was necessary for an effective reorganization; (5) whether grounds for relief from the stay existed and a motion, if filed, would likely have been granted prior to the automatic stay violation; (6) whether the failure to grant retroactive relief would cause unnecessary expense to the creditor; and (7) whether the creditor detrimentally changed its position on the basis of the action taken. In re Stockwell, 262 B.R. 275, 281 (Bankr. D. Vt. 2001); accord In re Marketxt Holdings, Corp., 428 B.R. 579, 589 (S.D.N.Y. 2010) (affirming bankruptcy court's application of Stockwell factors in retroactively annulling automatic stay).

Here, annulment is warranted as Creditor had no knowledge of the sale, as Debtor filed at the same time the foreclosure sale was held.  Second, Debtor has acted in a bad faith scheme to hinder, delay, and defraud creditors with her multiple bankruptcy filings and failure to pay for over eight (8) years.  Third, there are grounds for relief under 11 U.S.C.362(d)(4), as Debtor is engaged in a bad faith scheme, and Creditor's claim is not adequately protected based on lack of equity.  Lastly, Creditor detrimentally changed its position by holding the foreclosure sale and expending funds to have the foreclosure sale held.

Section 362(d)(4), as enacted by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, and amended by the Bankruptcy Technical Corrections Act of 2010, Pub. L. No. 111-327, provides in relevant part:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by

terminating, annulling, modifying, or conditioning such stay—
. . . .
(4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either–
      (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or
      B) multiple bankruptcy filings affecting such real property.
11 U.S.C. § 362(d)(4).

This provision gives the Court authority to grant in rem relief from the stay as to Debtor's interest in the Property, such that any and all future filings by any person or entity with an interest in the Property will not operate as an automatic stay for a period of two years after the date of the entry of such an order, provided that the order is recorded in compliance with applicable state laws governing notices of interest or liens in real property. In re Montalvo, 416 B.R. 381, 386 (Bankr.E.D.N.Y. 2009); 11 U.S.C. § 362(d)(4). A non-exclusive list of factors the Court may consider includes strategically timed serial filings affecting the real property compounded by a lack of payments, failure to confirm a plan in prior cases, proposal of a highly-questionable plan in the present case, failure to make post-petition payments to the secured creditor, and default under an interim order or stipulation. **_In re Olayer_**, 2017 Bankr. LEXIS 4045, at *5 (citing cases). Here, Debtor has filed multiple cases, and has a significant default prior to the foreclosure sale. The filing on the same day as the foreclosure sale is a blatant attempt to hinder, delay, and defraud this creditor.

In conclusion, the Creditor requests that its motion for relief from the bankruptcy stay as concerns the subject property described in the motion to the Court be granted in all respects.


Dated: March 19, 2020

_/s/ Jenelle C. Arnold_                          .
Jenelle C. Arnold, Bar No.: 5263777
Attorney for Creditor
Aldridge Pite, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933
Telephone: (858) 750-7600
Facsimile: (619) 590-1385
Email: JArnold@aldridgepite.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK - MANHATTAN DIVISION

-------------------------------------------------------------X          Case No. 19-13848-cgm
In Re:

                                                                        Chapter 13
SARAH ELIZABETH SANDERS,

                    Debtor.
-------------------------------------------------------------X

## **FRCP 55AFFIDAVIT**

As attorney for creditor admitted to practice before this Court, I represent that upon information and belief, the Debtor is not an infant, incompetent, or in the military.

Dated: March 19, 2020

                                                    /s/ Jenelle C. Arnold
                                                    Jenelle C. Arnold, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK - MANHATTAN DIVISION

-------------------------------------------------------------X          Case No. 19-13848-cgm

In Re:

                                                                        Chapter 13

SARAH ELIZABETH SANDERS,

                                                                        **ORDER LIFTING THE**
                    Debtor.                                             **AUTOMATIC STAY AND CO=-**
-------------------------------------------------------------X          **DEBTOR STAY**

   Upon reading the filing the Notice of Motion dated March 19, 2020, the Affirmation of

Jenelle C. Arnold, Esq., dated March 19, 2020 and the exhibits annexed thereto on behalf of

Spectrum Mortgage Holdings, LLC  ("Creditor"), by it's attorneys Aldridge Pite, LLP, for an Order

pursuant of 11 U.S.C. 362(d)(!0 and (d)(4)(B) and 1301(c)(1) granting annulment of the automatic

stay to foreclose the mortgage it holds on the property located at 322 East 120th Street, New York,

New York 10029 (the "Property"), and sufficient cause appearing therefore; it is

   **ORDERED**, that automatic stay is hereby modified pursuant to 11 U.S.C. 362 (d) (1) and

1301(c)(1),to allow Creditor to proceed with post foreclose actions regarding the Property, and it is

further,

   **ORDERED,** that Relief from the Automatic Stay is granted under 11 U.S.C. § 362(d)(4):  If

recorded in compliance with applicable state laws governing notices of interests or liens in real

property, the order is binding in any other case under this title purporting to affect the Property filed

not later than 2 years after the date of the entry of the order by the court, except that a debtor in a

subsequent case under this title may move for relief from the order based upon changed

circumstances or for good cause shown, after notice and hearing.

   **ORDERED,** the relief granted pursuant to 11 U.S.C. § 362(d)(4) shall be binding and

effective in any other case under this title purporting to affect the Property notwithstanding the

existence of the co-debtor stay of 11 U.S.C. §1201(a) or §1301(a) in said case.

**ORDERED**, that the 14 day stay imposed by FRBP 4001(a)(3) is hereby waived, and it is further

**ORDERED**, that this order is binding and effective despite conversion; and it is further

**ORDERED**, that the Trustee shall retain any and all interest the Debtor's/Debtors' estate may have in any surplus monies from a foreclosure sale of the Real Property; and it is further

**ORDERED**, that upon the commencement of a foreclosure proceeding against the Debtor, the Trustee and his/her counsel shall be served with a copy of the summons and complaint notice of pendency of action; and, it is further

**ORDERED**, that the Trustee be served with a copy of the referee's report of sale within thirty (30) days of the referee's preparation of the report of sale; and, it is further

**ORDERED**, that closure of the case shall not constitute an abandonment of the trustee's interest, if any, in any surplus proceeds.

###

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK - MANHATTAN DIVISION

------------------------------------------------------------X          Case No. 19-13848-cgm
In Re:


                                                                        Chapter 13
SARAH ELIZABETH SANDERS,

                              Debtor.                                   <u>**CERTIFICATE OF SERVICE**</u>
------------------------------------------------------------X

<u>**CERTIFICATE OF SERVICE**</u>

        The undersigned hereby certifies that a copy of the Notice of Motion, Motion for Relief

from Stay, Declaration In Support of Motion for Relief from Stay, 362 Affidavit, FRCP55

Affidavit, Memorandum of Law and a Proposed Order Lifting Stay was mailed by U.S. Mail on

March 19, 2020 to the parties listed below:


Sarah Elizabeth Sanders
322 E. 120th St, #1
New York, NY 10035

Krista M. Preuss
399 Knollwood Road
White Plains, NY 10603
info@ch13kp.com

Office of the United States Trustee
U.S. Federal Office Building
201 Varick Street, Room 1006
New York, NY 10014
USTPRegion02.NYECF@USDOJ.GOV

Lorraine Sanders
322 E. 120th St, #1
New York, NY 10035

                                        Respectfully submitted,

                                        /s/ Michael Leewright
                                        By: Michael Leewright
                                        4375 Jutland Drive, Suite 200
                                        San Diego, CA 92177-0933
                                        (858) 750-7600